In re Edith BLOOM, M.D., Debtor.

**Edith BLOOM, M.D., Appellant,**

v.

**Gilbert ROBINSON, Chapter 7 Trustee, Appellee.**

No. 87-5502.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 9, 1987.

Decided Feb. 24, 1988.

Richard M. Moneymaker, Moneymaker & Kelley, Los Angeles, Cal., for appellant.

Douglas D. Kappler, Robinson, Diamant, Brill & Klausner, Los Angeles, Cal., for appellee.

Before SNEED, PREGERSON and KOZINSKI, Circuit Judges.

SNEED, Circuit Judge:

Edith Bloom appeals from the Bankruptcy Appellate Panel's decision, 68 B.R. 455 (1986) that her retirement plans are not exempt from being distributed to her creditors. We reverse.

## I.

### FACTS AND PROCEEDINGS BELOW

Edith Bloom, a physician specializing in obstetrics and gynecology, filed for bankruptcy under Chapter 7 in September 1985. She was a fifty percent owner of "Tobie N. Chroman, M.D. and Edith Bloom, M.D., a Medical Corporation." In 1977, this corporation created a private retirement plan and a profit-sharing plan with Bloom and Chroman as the sole trustees.

At the time she filed for bankruptcy, Bloom's stated interest in the plans was approximately $475,000. However, the plans had made a number of loans to Bloom between 1978 and 1982, which totaled nearly $300,000 with accrued interest. Bloom gave the plans only unsecured promissory notes for the loans. Although Bloom made interest payments on the loans, she did not repay any principal. Thus, the assets of the plans to a substantial extent were Bloom's unsecured notes.

Bloom seeks to keep the plans out of her creditors' hands by excluding the plans from the administration of her assets in bankruptcy. She relies on California statutory law that exempts pension plans and profit-sharing plans set up for retirement purposes. Her Trustee argued successfully to a bankruptcy judge that Bloom's extensive borrowing from the plans made them lose their exempt status.[1] The Ninth Circuit Bankruptcy Appellate Panel agreed with the bankruptcy judge and the Trustee. Bloom now appeals from that panel's decision.

## II.

### JURISDICTION

Our jurisdiction rests upon 28 U.S.C. § 158(d) (Supp. II 1984).

---

1. Loss of exempt status would make available to the Trustee the amount of "unborrowed" assets in the plans. Neither party suggests that Bloom's notes would survive bankruptcy. It was suggested by Bloom, however, that loss of exempt status would precipitate a tax liability of Bloom's that would not be helpful to general creditors. Because we find that the plans did not lose their exempt status we need not address these issues in this opinion. Obviously our opinion does not address the income tax status of the Bloom trust following this decision.

## III.

## STANDARD OF REVIEW

The scope of the statutory exemption is a question of law, which we review de novo. *See In re Commercial W. Fin. Corp.*, 761 F.2d 1329, 1333 (9th Cir.1985).

## IV.

## DISCUSSION

The Bankruptcy Code allows debtors to exempt some of their assets from inclusion in the bankruptcy estate. 11 U.S.C. § 522. Section 522(b) requires debtors to choose either the federal or state statutory exemption scheme. Bloom, who resides in California, has chosen to look to California's exemption scheme. *See* § 522(b)(2)(A).

California Civil Procedure Code § 704.115(a) (West 1987) provides an exemption for "Profit-sharing plans designed and used for retirement purposes" and for "Private retirement plans." Bloom argues that her two plans are covered by these two exemptions. The Trustee argues that Bloom's heavy borrowing indicates that she did not use the plans for a retirement purpose. Instead, he contends, they became a type of tax-free savings account, from which Bloom could take money at will.

We recently considered a similar argument. In *In re Daniel*, 771 F.2d 1352 (9th Cir.1985), *cert. denied*, 475 U.S. 1016, 106 S.Ct. 1199, 89 L.Ed.2d 313 (1986), we discussed California Civil Procedure Code § 690.18(d), the predecessor of § 704.115.[2] There the debtor had established a medical corporation, which in turn had created a pension and profit-sharing plan. Daniel managed and controlled the plan. Acting as the plan's trustee, he made a $75,000 unsecured loan to himself so that he could buy a house. The loan, which "was substantially equal to the debtor's interest in the plan," *id.* at 1357, was secured only by Daniel's interest in the plan. He never made interest or principal payments on the loan; and when the original note came due, he rolled it over. Two weeks before filing bankruptcy, he deposited "all the corpora-

tion's available cash," $39,000, in the plan. *Id.* at 1354. We held that because "the plan essentially operated to meet debtor's short-term personal needs by lending money or shielding and hiding funds from creditors," it was not principally used for retirement purposes. *Id.* at 1358. We therefore denied the exemption.

Bloom does not deny that profit-sharing plans must be designed and used for retirement purposes in order to be exempt. She argues, however, that retirement plans need not be held to the same standard. Apparently she would have us hold that any plan declared to be a "private retirement plan" is exempt merely by virtue of its name. It is true that § 704.115 does not explicitly require private retirement plans to be "designed and used for retirement purposes" in order to be exempt. But we believe the absent phrase is implicit in the term "retirement plans," while it is not in that of "profit-sharing plans." Our reason is simple. Many profit-sharing plans are not used and designed for retirement purposes. The same cannot be said of retirement plans. Without regard to its label, a plan not used and designed for retirement purposes is not a retirement plan. Therefore, we apply the "designed and used for retirement purposes" standard to Bloom's retirement plan as well as her profit-sharing plan.

We note that other versions of the problem of pension plan exemption exist in other areas of the law. The Internal Revenue Code, for example, exempts from taxation pension and profit-sharing plans that meet certain requirements. *See* 26 U.S.C.A. § 401(a) (West Supp.1987). One of the requirements is that the plan must be "for the exclusive benefit" of the employees. *Id.* The Internal Revenue Service, in focusing on investment policies, has stated that an investment is consistent with the exclusive benefit rule if: (1) the cost of the investment does not exceed fair market value at the time of purchase; (2) a fair return is provided; (3) sufficient liquidity is maintained to permit distributions in ac-

2. For our purposes, the new statute is identical   in meaning to the old.

cordance with the plan; and (4) the safeguards and diversity that a prudent investor would adhere to are present. Rev.Rul. 73–532, 1973–2 C.B. 128; Rev.Rul. 69–494, 1969–2 C.B. 88. However, there has been some reluctance on the part of the Tax Court to give these rulings the force of law, in particular, the prudent investor and diversification requirements. *See, e.g., Winger's Dep't Store, Inc. v. Commissioner,* 82 T.C. 869, 881–82 (1984); *Shelby U.S. Distribs., Inc. v. Commissioner,* 71 T.C. 874, 882 (1979).

Another version of the exemption problem appears in the Employment Retirement Income Security Act of 1974 (ERISA). ERISA does require adherence to the prudent investor standard and the diversification requirement. 29 U.S.C. § 1104(a)(1) (1982). The source for this stricter standard is "the prudent person test as developed in the common law of trusts." *Donovan v. Mazzola,* 716 F.2d 1226, 1231 (9th Cir.1983), *cert. denied,* 464 U.S. 1040, 104 S.Ct. 704, 79 L.Ed.2d 169 (1984).

■ These provisions of the Bankruptcy Code, the Internal Revenue Code, and ERISA have similar purposes. All seek to protect retirement plans; but the standard appropriate to one is not necessarily appropriate to all. In particular, we are reluctant to read a prudent investor standard into the phrase "designed and used for retirement purposes." ERISA and the Internal Revenue Code are concerned with protecting employees' rights in pension plans. But the Bankruptcy Code exemption is concerned only with safeguarding those assets of the debtor from the grasp of the creditors that he or she has set aside for retirement. It need no more concern itself with the financial safety of those assets than with any other asset of the debtor. The key requirement for bankruptcy purposes is that the plan be used for retirement purposes. Therefore, it is inappropriate to hold the debtor to the prudent investor standard. A poorly, even imprudently, invested plan may still be designed and used for retirement purposes. That is enough to satisfy the Bankruptcy Code exemption.

■ The plans' unsecured loans to Bloom may well have been imprudent. Loaning more than half of her interest to herself may well have violated the principle of diversification. Nevertheless, we hold that Bloom's plans were not so abused as to lose their retirement purpose. We find support for this holding in four circumstances. First, Bloom followed the procedures set out in the Trust Agreement for obtaining loans. Second, Bloom was charged a reasonable rate of interest on the loans. Third, she regularly made the interest payments due, over a period of several years. These three factors indicate that, unlike the debtor in *Daniel,* the transactions were not "more a withdrawal than a loan." *Daniel,* 771 F.2d at 1357. Fourth, there is no indication that Bloom used the plan to hide otherwise ineligible assets from bankruptcy administration, as did the debtor in *Daniel.* Although the Trustee and the Bankruptcy Appellate Panel drew attention to the fact that Bloom made a large interest payment shortly before filing for bankruptcy, neither disputes Bloom's contention that the deposit was at the same time of year as all of her previous interest payments. This deposit is thus very different from Daniel's transfer of his medical corporation's loose cash to his plan on the eve of bankruptcy.[3]

In sum, we believe that Bloom did not cease to treat her plans as retirement plans. We emphasize that we are not creating a uniform test or a comprehensive list of relevant factors. All factors are relevant; but no one is dispositive. Rather, all of them must be considered in the light of the fundamental inquiry—whether

---

**3.** Both parties urge us to consider the purpose of the loans. Bloom used the loans to invest in Florida real estate. The Trustee argues that this shows that the loans were speculative; Bloom argues that it shows that the loans were for retirement purposes. We are not convinced by either argument. The plans received no interest in the Florida property, and the loans were not made on the condition that Bloom invest in Florida land. Apparently Bloom could have invested in anything she wished. Therefore, we believe that the loans must be examined on their own merits, without considering how the amount borrowed was spent.

the plan was designed and used for a retirement purpose.

REVERSED.