**In re Cathy Lee CROSBY, Debtor.**

**Bankruptcy No. 92–38042 AG.**

United States Bankruptcy Court,
C.D. California.

Nov. 1, 1993.

278

Joseph A. Eisenberg and Victoria S. Kaufman of Levene & Eisenberg, a Professional Corp., Los Angeles, CA, for debtor.

David Weinstein, Los Angeles, CA, for trustee.

## MEMORANDUM OF DECISION

ARTHUR M. GREENWALD, Bankruptcy Judge.

## NATURE OF PROCEEDINGS

The Debtor, Cathy Lee Crosby (Ms. Crosby), filed a Chapter 7 Petition on July 20, 1993. Shortly thereafter, she filed certain schedules and statements as required by Rule 1007(b), Fed.R.Bankr.P., including schedules listing her personal property (Schedule B) and property claimed as exempt (Schedule C). These schedules were amended on two occasions.

The first meeting of creditors was held on August 26, 1992 and was continued to December 17, 1992 by agreement.

The Trustee filed objections to the following exemptions claimed by Ms. Crosby which remain at issue.

(1) Ms. Crosby's interest in CAT Productions, Inc.'s Profit Sharing Plan And Trust Agreement.

(2) Ms. Crosby's Individual Retirement Account (IRA) holding $6,000.

(3) Certain items of personal property which Ms. Crosby claims as exempt under California Code of Civil Procedure (C.C.P. Section 704.020.)

On May 3, 1993 and May 21, 1993, this court held hearings regarding the Trustee's objections, as well as his motion for the turnover of certain items of personal property listed by Ms. Crosby on her schedules. During the course of these proceedings, the Trustee and Ms. Crosby agreed that as to Ms. Crosby's 1980 Jeep vehicle, she was entitled to claim a twelve hundred dollar ($1,200) exemption. Also, the parties agreed that Ms. Crosby is entitled to claim a fifty thousand dollar ($50,000) homestead exemption.

## STATEMENT OF FACTS

Ms. Crosby, as President of CAT Productions and its successor, Incredible, Inc. (CAT), is its only employee. She is the trustee and sole beneficiary of the corporation's Profit Sharing Plan And Trust Agreement (Plan). The Plan was adopted by CAT on November 8, 1988. The Internal Revenue Service issued on May 27, 1992 a determination letter qualifying the corporation and Ms. Crosby for certain tax benefits as prescribed under the Internal Revenue Code (I.R.C.).

The Plan provides that the Trust Fund is to receive contributions from the Pension Plan. With respect to the Trustee's authority, the Plan provides, in pertinent part, that:

generally to do all such acts, execute all such instruments, take all such proceedings and exercise all such rights and privileges with relation to property constituting the Trust Fund as if the Trustee were the absolute owner, thereof, without regard to investments that might otherwise be deemed proper for a trust (ref., Trust Indenture, Art. II, ¶ 2.3 mm).

The Trust Indenture also contains a Spendthrift Provision which states as follows:

5.2 *Spendthrift Provision.* No person entitled to any benefits under this Agreement shall have any right to assign, transfer, hypothecate, encumber, commute or anticipate his interest in any benefits under this Trust, and such benefits shall not, in any way, be subject to any legal process or levy of execution upon, or attachment or garnishment proceedings against, the same for the payment of any claim against any such person; provided, however, that the Committee may permit the voluntary revocable assignment of up to ten percent (10%) of any benefit payment by any Participant who is receiving benefits under the Plan if such assignment or alienation is not made for purposes of defraying administrative costs of the Plan.

Retirement age under the Plan is fifty-five or ten years after an individual first participated in the Plan.

The following summarizes transactions involving loans and distributions from the Plan to Ms. Crosby and the repayment of these

loans during the period 1989 through September 30, 1992.

a. *1989:* A total of $509,948 was withdrawn by Ms. Crosby and reported on Form 1099. Of this sum, $364,948 was placed into an IRA account, and $145,000 treated as a distribution to Ms. Crosby.

b. *1990:* On or about March 1, 1990, Ms. Crosby borrowed $50,000 from the Plan. On December 31, 1990, Ms. Crosby repaid $19,500. In August of 1991, she repaid $30,640.

c. *1991:* On or about April 15, 1991, the Plan loaned $150,000 to her aunt and uncle, Eugene F. Crowell and Jean F. Crowell (Crowells), as evidenced by a promissory note and secured by a deed of trust. Thereafter, the Crowells loaned the same amount as evidenced by two promissory notes, one in the amount of $100,000 and the second in the amount of $50,000. Both notes essentially had the same terms as contained in the promissory note executed by the Crowells in favor of the Plan. As of December 31, 1992, approximately $149,000 of the $150,000 loan to Ms. Crosby remained outstanding, though the Crowells have made all their payments due on their loan.

On or about August 15, 1991, Ms. Crosby withdrew $240,105 from the Plan. Of this amount $150,000 was treated as a distribution and reported on Ms. Crosby's 1991 income tax return, the balance of $90,100 constituting a loan to her. A portion of the August 15, 1991 withdrawal was used to repay $30,640 of the March 1990 loan.

d. *1992:* Ms. Crosby borrowed the sum of $49,000 from the Plan consisting of the sum of $14,000 on May 31, 1992 and $35,000 on September 30, 1992.

### Schedule Of Loans And Distributions From The Plan During 1989–1992

#### Description of Transaction

| Date | Amount | Loan | Repayment | Distribution |
|---|---|---|---|---|
| 1989 | $509,948 | | | |
| | 364,948 * | | | |
| | $145,000 | | | $145,000 |
| 1990 | | | | |
| 3/1 | $ 50,000 | $ 50,000 | | |
| 12/31 | <19,500 > | | $ 19,500 | |
| 1991 | | | | |
| 8/15 | $240,105 | $ 90,000 | | $150,005 |
| 8/15 | < 30,640 > | | $ 30,640 | |
| 8/15 | < 90,100 > | | 90,100 | |
| 1992 | | | | |
| 5/92 | $ 14,000 | $ 14,000 | | |
| 9/ | 35,000 | 35,000 | | |
| Totals | $343,865 | $189,100 | <$140,240> | $295,005 |

* Deposited into IRA Account.

Currently, the Plan's assets consist of (1) approximately $60,000 cash; (2) a 50% interest in Angel Acres II partnership, which owns raw land on St. Croix; (3) a promissory note in the approximate amount of $150,000 payable by Eugene and Jean Crowell, se-

cured by a second deed of trust on the Crowell's home; (4) a promissory note in the amount of $14,000 payable by Ms. Crosby; (5) a promissory note in the amount of $35,000 payable by Ms. Crosby, and (6) an unspecified number of bonds and shares of stock in Southern Equities Corporation, Ltd.

## DECISION

### Ms. Crosby's Interest In The Plan

1. This court concludes that Ms. Crosby's interest in the Plan is not excluded from the estate pursuant to 11 U.S.C. § 541(c)(2). Ms. Crosby has failed to establish that the Plan's anti-alienation provision is enforceable under applicable nonbankruptcy law.

2. The Trustee's objection to Ms. Crosby's claimed exemption of her interest in the Plan pursuant to C.C.P. § 704.115(a)(2) is overruled. The Trustee has failed to establish that the Plan is not designed and used by Ms. Crosby for retirement purposes.

### Ms. Crosby's IRA Account

The Trustee's objection to Ms. Crosby's claimed exemption of her IRA Account, pursuant to C.C.P. § 704.115(a)(3), is overruled. The Trustee has failed to establish that the Account is not reasonably necessary for her retirement.

### Ms. Crosby's Claimed Exemption Of Certain Personal Property

The Trustee's objection to Ms. Crosby's claimed exemption of certain listed personal property pursuant to C.C.P. §§ 704.020 is overruled.

1. § 541(c)(2) provides:
 A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title.

2. § 7476(a) provides:
 (a) Creation of remedy.
 In a case of actual controversy involving—
 (1) a determination by the Secretary with respect to the initial qualification or continuing qualification of a retirement plan under subchapter D of chapter 1, or
 (2) a failure by the Secretary to make a determination with respect to—
 (A) such initial qualification, or

### Trustee's Request For Turnover Of Certain Exempt Property

The Trustee's request for the turnover of certain exempt property is denied.

### Ms. Crosby's Claimed Homestead Exemption And Vehicle Exemption

Pursuant to an agreement reached by the Trustee and Ms. Crosby, this court approves Ms. Crosby claimed exemption of $1,200 applicable to the Jeep automobile and her claimed $50,000 homestead exemption.

## DISCUSSION

### Ms. Crosby's Interest In The CAT Plan Is Not Excluded From The Bankruptcy Estate Under 11 U.S.C. § 541(c)(2) As Its Anti–Alienation Provision Is Not Enforceable Under The Internal Revenue Code

■ Ms. Crosby contends that her interest in the Plan is not property of the estate pursuant to 11 U.S.C. § 541(c)(2),[1] as the Plan contains an anti-alienation provision that is enforceable under applicable nonbankruptcy law. Ms. Crosby cites the United States Supreme Court case of *Patterson v. Schumate*, — U.S. —, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992) in support of her position, and asserts that under I.R.C. § 7476(a)[2] the restriction contained in the Plan is enforceable. Therefore, her interest in the Plan is excludable under § 541(c)(2).

In the *Patterson* case, the Supreme Court stated as follows regarding the statutory phrase "enforceable under nonbankruptcy law":

"The natural reading of this provision entitles a debtor to exclude from property of the estate any interest in a plan or trust

(B) such continuing qualification if the controversy arises from a plan amendment or plan termination,
upon the filing of an appropriate pleading, the Tax Court may make a declaration with respect to such initial qualification or continuing qualification. Any such declaration shall have the force and effect of a decision of the Tax Court and shall be reviewable as such. For purposes of this section, a determination with respect to a continuing qualification includes any revocation of or other change in a qualification.

that contains a transfer restriction enforceable under any relevant nonbankruptcy law. Nothing in § 541 suggests that the Phrase 'applicable nonbankruptcy law' refers, as petitioner contends, exclusively to *state* law. The text contains no limitation on 'applicable nonbankruptcy law' relating to the source of the law. ... Plainly read, the provision encompasses any relevant nonbankruptcy law, including federal law such as ERISA. We must enforce the statute according to its terms."

The court then went on to hold that ERISA qualified plans were excluded from the estate, as the required transfer restrictions fell within the requirements of 541(c)(2).

In the case of *In re Witwer,* 148 B.R. 930 (Bankr.C.D.Cal.1992), the court determined that the debtor's pension plan was not excludable under I.R.C. § 401(a)(13), as a reading of the statute established that it did not create any substantive rights that a beneficiary or participant of a qualified retirement trust could enforce. Therefore, the Plan did not fall within § 541(c)(2) and accordingly, was not excluded from the estate. In this regard, the court stated, in pertinent part:

 The provisions of I.R.C. § 401(a) relate solely to the criteria for tax qualification under the Internal Revenue Code. Although a transfer in violation of the required anti-alienation provision could result in adverse tax consequences I.R.C. § 401(a) does not appear to create any substantive rights that a beneficiary or participant of a qualified retirement trust can enforce. *Nolan v. Meyer,* 520 F.2d 1276, 1280 (2d Cir.1975), *cert. denied,* 423 U.S. 1034, 96 S.Ct. 567, 46 L.Ed.2d 408 (1975); *Cowan v. Keystone Employees' Profit Sharing Fund,* 586 F.2d 888, 890 (1st Cir. 1978); *Reklau v. Merchants National Corporation,* 808 F.2d 628 (7th Cir. 1986). Furthermore, absent the most compelling evidence of affirmative Congressional intent a federal court should not infer a private cause of action under I.R.C. § 401(a). *Cf. Touche Ross & Company v. Reddington,* 442 U.S. 560, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979) (As the terms of § 17(a) did not confer a private right of action, the

Supreme Court refused to infer such a right under the Securities Exchange Act of 1934). As I.R.C. § 401(a) by its literal terms grants no private right of action, this Court finds that the Debtor lacks standing to enforce his Plan's anti-alienation provision. Since this Court does not adopt the Debtor's expansive reading of *Patterson,* the Debtor's right to retain any of the funds in his Plan is dependent upon applicable state spendthrift trust law or state exemption law.

Section 7476 grants to the United States Tax Court jurisdiction to enter declaratory judgments with respect to the initial or continuing qualification of a retirement plan. The statute provides a remedy whereby the court's jurisdiction may be invoked where there exists a case of actual controversy involving a determination by the Secretary of the Treasury regarding plan qualification or a failure by the Secretary to make a determination regarding either the initial or continuing qualification.

As is the case under I.R.C. § 401(a)(13), Section 7476(a) does not create any substantive rights that a beneficiary or participant of a qualified plan can enforce, nor does it provide for a private right of action enforcing the anti-alienation provision of the Plan. A plain reading of the statute indicates that the statute is limited exclusively to controversies involving determinations, or lack thereof, by the Secretary of the Treasury regarding plan qualification under the I.R.C. Accordingly, Section 7476(a) does not fall within the purview of § 541(c)(2). Therefore, Ms. Crosby's interest in the Plan is not excludable from her estate under § 541(c)(2).

### Ms. Crosby's Plan Is Not Excluded From The Estate Under § 541(c)(2) As Its Anti–Alienation Provision Is Not Enforceable Under California Spendthrift Law

 Under Bankruptcy Code § 541(c)(2), the corpus of a trust is excluded from the bankruptcy estate if the trust contains an anti-alienation provision enforceable under state spendthrift law. *In re Kincaid,* 917 F.2d 1162, 1166–69 (9th Cir.1990); *In re Witwer,* 148 B.R. 930, 937, (Bkrtcy.C.D.Cal. 1992). Although California law generally recognizes the validity of spendthrift trusts, a

spendthrift trust is not enforceable if the trust's settlor and beneficiary are the same. Cal.Prob.Code (CPC) § 15304(a). This restriction is intended to prevent an individual from enjoying the use and benefits of property while putting the property beyond the reach of creditors. *Witwer*, 148 B.R. at 937.

In the instant case, Ms. Crosby is both the trustee and beneficiary of the Plan. Additionally, Ms. Crosby is the president and only employee of the settlor, CAT. Although a corporation is a separate legal entity under California law, courts have disregarded this legal fiction when analyzing the validity of spendthrift trusts settled by a one-person corporation for the benefit of the same individual. *In re Reed*, 951 F.2d 1046 (9th Cir. 1991); *In re Kaplan*, 97 B.R. 572 (9th Cir. BAP 1989); *In re Lichstrahl*, 750 F.2d 1488 (11th Cir.1985); *In re Goff*, 706 F.2d 574 (5th Cir.1983). A spendthrift trust of this type should not be enforced under California law if a beneficiary has excessive control over the trust. *In re Witwer*, 148 B.R. at 937; *In re Reid*, 139 B.R. 19, 21 (Bkrtcy.S.D.Cal.1992).

The court in *Witwer* concluded that the anti-alienation provision contained in the debtor's trust was not enforceable under California law because the debtor had "unbridled control over the plan and his immediate access to the plan assets." *Id.* 148 B.R. at 938. Because the debtor, at his sole discretion, could (1) authorize a distribution under the plan; or (2) terminate the plan, the court concluded that the anti-alienation provision

was not enforceable. As a result, the debtor's plan was not excluded from the bankruptcy estate pursuant to § 541(c)(2).

Ms. Crosby is the Plan's Trustee. As was the case in *Witwer*, Ms. Crosby, as Trustee, has unbridled control over the Plan and access to its assets. She has unqualified discretion regarding the making of loans and the disposition of assets. Ms. Crosby, as a beneficiary, is entitled to demand a complete distribution of the corpus at any time, since her interest in the Plan is fully vested and she has exceeded the required retirement age, as defined under the Plan.[3] For these reasons, this court finds that the Trust's anti-alienation provision is unenforceable under California spendthrift law. Therefore, on these grounds, as well, Ms. Crosby's interest in the Plan is not excluded from the estate under Bankruptcy Code § 541(c)(2).

### The Debtor's Pension Plan Is Exempt From The Bankruptcy Estate Under California Code Of Civil Procedure Section 704.115(b)

Under the Bankruptcy Code, an individual debtor is entitled to exempt certain assets from the estate. A debtor may exempt either those assets delineated in the Bankruptcy Code or those assets exempted by the law in the debtor's state. 11 U.S.C. § 522(b)(2)(A).[4]

■ C.C.P. § 704.115(b)[5] permits a debtor to exempt all amounts held, controlled, or in

---

3. Retirement age according to the adoption agreement is age 55, or ten years after the anniversary of the date the participant first commenced participation in the Plan. The Profit Sharing Plan and Trust was adopted in 1991. However, Ms. Crosby initially participated in predecessor Plans in 1980. Therefore, it appears as though she is eligible for retirement.

4. 11 U.S.C. § 522(b)(2)(A) provides, in pertinent part:

(b) Notwithstanding section 541 of this title, an individual debtor may exempt from property of the estate the property listed in either paragraph (1) or, in the alternative, paragraph (2) of this subsection.

....

(2)(A) any property that is exempt under Federal law, other than subsection (d) of this section, or State or local law that is applicable on the date of the filing of the petition ...

5. C.C.P. § 704.115 provides, in pertinent part:

(a) As used in this section, "private retirement plan" means:

(1) Private retirement plans, including, but not limited to, union retirement plans.

(2) Profit-sharing plans designed and used for retirement purposes.

(3) Self-employed retirement plans and individual retirement annuities or accounts provided for in the Internal Revenue Code of 1954 as amended, to the extent the amount held in the plans, annuities, or accounts do not exceed the maximum amounts exempt from federal income taxation under that code.

(b) All amounts held, controlled, or in process of distribution by a private retirement plan, for the payment of benefits as an annuity, pension, retirement allowance, disability payment, or

process of distribution by a private retirement plan, for the payment of benefits as an annuity, pension, retirement allowance, disability payment, or death benefit from a private retirement plan. A profit sharing plan constitutes a private retirement plan if it is designed and used for retirement purposes. C.C.P. § 704.115(a)(2).[5] The purpose of this exemption is to safeguard a stream of income for pensioners at the expense of bankruptcy creditors. *In re Witwer*, 148 B.R. at 941.

Ms. Crosby contends that the Plan was designed and used for retirement purposes. Accordingly, she claims that her interest in the Plan is exempt pursuant to C.C.P. 704.-115(b).

The Trustee objects to Ms. Crosby's claimed exemption on the grounds that she designed and used the Plan for present use rather than for retirement purposes. Under Rule 4003(c), Fed.R.Bankr.P.[6] the Trustee has the burden of proving that Ms. Crosby's interest in the Plan is not properly claimed as an exemption under C.C.P. § 704.115(b).

Initially, the Trustee argues that the claimed exemption should be denied because Ms. Crosby used the Plan for tax avoidance purposes rather than for retirement purposes. The Trustee makes reference to the $150,000 loan made to the Crowells and the Crowells subsequent loan of a similar amount to Ms. Crosby.

The Trustee's accountant contends that Ms. Crosby would have incurred a tax liability in the approximate amount of $80,000 had she simply withdrawn $150,000 from the Plan. The Trustee's accountant also claims that Ms. Crosby avoided reporting $90,000 of income for the year of 1991 by withdrawing $240,000 from the Plan, depositing it in a Nuveen tax-flavored bond fund, and making anonymous withdrawals from the bond fund

for the next two months. He acknowledges that she reported as income on her 1991 tax return $150,000 of the $240,000.

The accountant's contentions suggest that the herein described loans and withdrawals were instituted to avoid taxes and that the Plan was used for tax avoidance purposes. This court declines to make a finding of tax avoidance premised exclusively upon the opinion of the Trustee's accountant. No determination has been made by the taxing authorities as to the taxability of these transactions. In addition, the Trustee has failed to present sufficient facts independent of his accountant's contentions to establish that the Plan was used as a device for tax avoidance rather than for retirement purposes. The court concludes that the Trustee has failed to establish that Ms. Crosby's interest in the Plan is not exempt under C.C.P. § 704.115(b) because she allegedly used the Plan for tax avoidance purposes rather than for retirement purposes.

The Trustee also contends that Ms. Crosby's interest does not qualify for exemption under C.C.P. § 704.115(b) because the Plan's assets were not invested in a manner consistent with retirement purposes. Referring to the Plan's assets, the Trustee argues that Ms. Crosby would have made investments in more appropriate assets such as corporate bonds, utility stocks and Treasury notes had she intended to use the Plan as a means of providing for her retirement.

The Ninth Circuit has rejected a similar argument in the case of *In re Bloom*, 839 F.2d 1376 (9th Cir.1988). In *Bloom*, the Ninth Circuit considered the issue of whether a plan was designed and used for retirement purposes pursuant to C.C.P. § 704.115. The court determined that it was inappropri-

---

death benefit from a private retirement plan are exempt.

. . . . .

(e) Notwithstanding subdivisions (b) and (d), except as provided in subdivision (5), the amounts described in paragraph (3) of subdivision (a) are exempt only to the extent necessary to provide for the support of the judgment debtor when the judgment debtor retires and for the support of the spouse and dependents of the judgment debtor, taking into account all re-

sources that are likely to be available for the support of the judgment debtor when the judgment debtor retires ...

6. Rule 4003(c), Fed.R.Bank.P. provides, in pertinent part:

(c) **Burden of Proof.** In any hearing under this rule, the objecting party has the burden of proving that the exemptions are not properly claimed. After hearing on notice, the court shall determine the issues presented by the objections.

ate to examine the plan under a prudent investor test in determining whether it was used for retirement purpose, since even an imprudently invested plan may be designed and used for retirement purposes. *In re Bloom,* 839 F.2d at 1379.

The court, in *Witwer,* 148 B.R. at 940, followed the *Bloom* case and rejected the prudent investor test in determining whether a plan is used for retirement purposes. In this regard, the court stated, in pertinent part, as follows:

> ██ The key requirement to determine if the Debtor's Plan is exempt from the estate, is that the Plan must be used for retirement purposes. *In re Bloom,* 839 F.2d 1376, 1379 (9th Cir.1988). It is, however, inappropriate to hold the Debtor to a prudent investor test since even an imprudently invested plan may still be used for retirement purposes. *Id.*

In *Witwer,* the debtor's plan made large loans to the debtor and his friends. On the petition date, two of the three outstanding loans were in default. The court declined to consider in hindsight the prudence of each investment when determining whether the plan was being used for retirement purposes. *Id.* The court addressed the question of whether the plan was so abused that it lost its retirement purpose and concluded that despite numerous loans, the debtor did not cease to treat the plan as a retirement plan. In this regard, the court stated in pertinent part:

> In *In re Bloom,* the Ninth Circuit Court of Appeals held that although the debtor had loaned more than half of the funds in her retirement plan to herself without taking a security interest, her actions did not constitute such an abuse of the plan to cause it to lose its retirement purpose and exemption under California law. *Id.* Of particular importance was the fact that the debtor followed trust agreement procedures for obtaining loans, charged a reasonable rate of interest on the loans, regularly made interest payments, and there was no indication that she used the plan to hide otherwise ineligible assets from bankruptcy administration. *Id.*

> ██ Similarly, in this case, the Debtor followed trust agreement procedures in obtaining loans for himself and others. Promissory notes were obtained for all transactions. All loan agreements provided commercially reasonable interest rates which ranged from a low of 9.5% to a high of 14%. The Debtor has repaid all the money he has borrowed except the one loan with a maturity date of July 10, 1995. The fact that two of the loans made to others are in default is insufficient to find that the Plan was not designed and used for retirement purposes. As the *Bloom* Court has noted, this Court cannot, in hindsight, determine the investment prudence of each individual investment.

> Further, although numerous loans were made by the Plan, the Plan invested extensively in investments other than loans to individuals. Also, the Debtor has not made any contributions to the Plan within the last six years. Therefore, unlike the debtor in *Daniel,* it cannot be said that this Debtor attempted to hide otherwise ineligible assets from bankruptcy administration nor can it be said that this Debtor's transactions were not in furtherance of legitimate long-term retirement purposes. *Daniel,* 771 F.2d at 1358. In sum, this Court finds that the Debtor did not cease to treat his Plan as a retirement plan. As the Debtor's Plan was designed and used for retirement purposes the Plan corpus may be entirely exempt under C.C.P. § 704.115.

*Id.* 148 B.R. at 940.

The Court of Appeals in the case of *In re Daniels,* 771 F.2d 1352, (9th Cir.1985), considered the issue of whether a debtor abused a retirement plan to the extent that it no longer had a retirement purpose. In *Daniels,* the court determined that the debtor abused his retirement plan by using it for current needs since (1) the loans from the plan to the debtor resembled withdrawals; and (2) the debtor utilized the plan to hide otherwise non-exempt assets from creditors. *Id.* at 1357. The Court of Appeals determined that the plan's loan to the debtor were tantamount to a withdrawal for present needs, since the loan amount was substantial-

ly equal to the debtor's interest in the plan. Additionally, the debtor had renewed the entire debt when it became due. *Id.*

■ Applying the factors considered by the Court of Appeals in the *Bloom* and *Daniels* cases, the Plan's loans to Ms. Crosby and the Crowells are not withdrawals constituting an abuse of the Plan. The record fails to disclose that the Plan loaned money to Ms. Crosby in an amount substantially equal to her entire interest in the Plan, or that Ms. Crosby engaged in loan renewals equal to her entire interest in the Plan. In addition, the record fails to disclose that the procedures set out in the Trust Agreement regarding loans were not followed. The Crowells have made timely and continuous payments to the Trust. Prior to filing for bankruptcy, Ms. Crosby borrowed $189,000 from the Plan, the sum of $140,000 having been repaid. As to the balance of $49,000, she has paid all of the principal and interest payments due on the $35,000 loan of September 30, 1992 and all interest due on the $14,000 loan of May 31, 1992. As trustee, Ms. Crosby has broad authority to make loans from the Plan. The record before the court fails to disclose the existence of any conditions as to the manner in which the loan proceeds were to be expended. Consistent with the criteria set forth in *Bloom* and *Daniels* cases, the court finds that the loans made to Ms. Crosby and the Crowells did not constitute an abuse of the Plan.

The Trustee also contends that Ms. Crosby utilized the Plan for the purpose of hiding otherwise ineligible cash and property from her creditors. In this regard, the Trustee asserts that the Crowells' loan and the Plan's acquisition of the St. Croix property in 1988, plus the Plan cash on hand, reflect this purpose. The court rejects these contentions, as the Trustee has failed to present evidence establishing that the Plan's assets were acquired in an attempt to hide assets from CAT's or Ms. Crosby's creditors.

The Trustee has failed to meet its burden of establishing that the Plan was not designed or used for retirement purposes. The Trustee's objection is overruled.

## The Debtor's IRA Is Exempt From The Estate Pursuant To California Code Of Civil Procedure § 704.115(a)(3)

On the petition date Ms. Crosby maintained an IRA account which contained six thousand dollars ($6,000). The Trustee has objected to her claimed exemption pursuant to C.C.P. § 704.115(a)(3).

■ Under C.C.P. § 704.115(a)(3), IRA funds are exempt only to the extent necessary to provide for the support of the debtor and his or her family when the debtor retires. *In re Dalaimo,* 88 B.R. 268, 272–273 (Bankr.S.D.Cal.1988). In the *Dalaimo* case, the court stated the following regarding the application of C.C.P. 704.115(a)(3):

> The "reasonably necessary" standard has been given varied applications. However, two common themes surface in nearly every analysis of "reasonably necessary," (1) the debtors present need for the money and (2) the ability to rebuild the retirement fund if purged.

*Id.* at 272.

In *Dalaimo,* the court made the following analysis in deciding that the Debtor's government pension and IRA were exempt under C.C.P. 704.115:

> This court finds that the claimed IRA exemptions must be sustained under the 'reasonably necessary' standard. The amount of $11,706.00 is relatively modes. The budget submitted by the [debtors] is reasonable. While there is sufficient current income to meet current expenses, there is no contingency allowance built in. Such contingencies are inevitable, given the age of the [debtors] and the inevitable forces of inflation and obsolescence.... Although this court cannot prognosticate the debtors unforeseen future liabilities, it must anticipate likely problems and probable consequences, such as ill health and the cost of health care, *inter alia....* This court finds the $11,706.00 IRA security blanket to be reasonably necessary, regardless of the lack of a present need to meet current expenses.

*Id.* at 272–73.

In the case of *In re Fisher,* 63 B.R. 649 (Bankr.W.D.Ky.1986), the court stated as fol-

lows regarding the reasonably necessary test:

> to determine if the reasonably necessary test is met, the court must examine all of the facts and circumstances including the debtor's age, earning capacity, present and future financial needs, ability to ensure against future disruptions in earning capacity, and his ability to reestablish a retirement fund.

*Id.* at 651. The court further explained that:

> Our task is to attempt to interpret the purpose of the exemption statute, which we believe is to afford certain protection to debtors upon their retirement or disability. The purpose of exemptions is '. . . to provide sufficient assets to enable the debtor to make a fresh start in accumulating post-bankruptcy wealth for future support.'

*Id.* at 652 (citations omitted).

In the instant case, the Trustee has failed to establish that Ms. Crosby's six thousand dollar fund is not reasonably necessary for her · retirement. Ms. Crosby's scheduled monthly expense budget indicates that these expenses cannot be satisfied out of her estimated monthly earnings. If she does not obtain work in the near future, she will not have sufficient money on which to live. As this court found when converting this case to chapter 7 from chapter 11, the prospects for Ms. Crosby's generating future revenues are not good. It is questionable whether Ms. Crosby can rebuild her retirement account, were the court to purge her IRA account.

Accordingly, the Trustee's objection to the Ms. Crosby's claimed exemption under § 704.115(a)(3) is overruled.

### The Debtor's Personal Property And Works Of Art Are exempt Under California Code Of Civil Procedure Sections 704.020 and 704.040

■ The Trustee initially objected to Ms. Crosby's claimed exemption of household goods asserted pursuant to C.C.P. § 704.-020.[7] The Trustee took the position that the claimed items were not ordinarily and reasonably necessary for use by Ms. Crosby at her residence, as required by the statute. The Trustee subsequently withdrew his objection, but took the position that the following items were exempt only to the extent allowed by C.C.P. § 704.040:[8]

| Item No. | Description |
| --- | --- |
| 1. | Libby Berry lithograph |
| 2. | Disney movie cell |
| 3. | Egyptian battle scene painting |
| 4. | Jerry DaSilva water color portrait |
| 5. | Salvador Dali lithograph |
| 6. | L. Mariane etching |
| 7. | Watercolor painting of an Egyptian Pharoah |
| 8. | Cambodian temple rubbing |
| 9. | Ralph Knie lithograph |
| 10. | Chinese wood horse |
| 11. | Georges Carpentier brass sculpture |
| 12. | South American breastplate |
| 13. | South American terra cotta whistle |
| 14. | Oak frame mirror |
| 15. | Frosted glass vase |
| 16. | Blown glass bowl |
| 17. | Drum |
| 18. | Wood secretary desk |
| 19. | Silver hunting knife |
| 20. | Silver fan |
| 21. | Cotton and wool rug |
| 22. | Kelim weaving |
| 23. | Stamp collection |
| 24. | Rolex watch |
| 25. | Longines watch |
| 26. | Lynx fur coat |

Section 704.040 permits a debtor to claim as exempt jewelry, heirlooms, and works of art. However, the debtor may only claim these items to the extent that their aggregate equity does not exceed $2,500. In contrast, C.C.P. § 704.020 contains no limitation on the total value of household furnishings

---

7. C.C.P. § 704.020 provides in pertinent part:
 (a) Household furnishings, appliances, provisions, wearing apparel, and other personal effects are exempt in the following cases:
 (1) If ordinarily and reasonably necessary to, and personally used or procured for use by, the judgment debtor and members of the judgment debtor's family at the judgment debtor's principal place of residence.

8. C.C.P. § 704.040 provides in pertinent part:

 Jewelry, heirlooms, and works of art are exempt to the extent that the aggregate equity therein does not exceed two thousand five hundred dollars ($2,500).

and personal effects which a debtor may claim as exempt under this section.

Ms. Crosby and the Trustee do not dispute that the following items are exempt pursuant to C.C.P. § 704.040 (Undisputed Property), though Ms. Crosby contends that these items also qualify for exemption under § 704.020.

| Item No. | Description | Value & Equity |
|---|---|---|
| 2. | Disney movie cell | $ 150.00 |
| 3. | Egyptian battle scene painting | 10.00 |
| 5. | Salvador Dali lithograph | 250.00 |
| 7. | Water color painting of an Egyptian pharaoh | 10.00 |
| 8. | Cambodian temple rubbing | 100.00 |
| 9. | Ralph Knie lithograph | 10.00 |
| 10. | Chinese wood horse | 250.00 |
| 20. | Silver fan | 362.50 |
| 24. | Rolex watch | 800.00 |
| 25. | Longines watch | 600.00 |
| | Total | $2,492.50 |

As there is no dispute that these items can be claimed as exempt under C.C.P. § 704.040, the court need not consider whether they fall under the purview of C.C.P. § 704.020.

The following items of personal property, however, remain at issue (Contested Property):

| Item No. | Description |
|---|---|
| 1. | Libby Berry lithograph |
| 4. | Jerry DaSilva water color portrait |
| 6. | L. Mariane etching of street scene |
| 11. | Georges Carpentier brass sculpture |
| 12. | South American breastplate |
| 13. | South American terra cotta whistle |
| 14. | Oak frame mirror |
| 15. | Frosted glass vase |
| 16. | Blown glass bowl |
| 17. | Drum |
| 18. | Wood secretary desk |
| 19. | Silver hunting knife |
| 21. | Cotton and wool rug |
| 22. | Kelim weaving |
| 23. | Stamp collection |
| 26. | Lynx Fur coat |

Ms. Crosby contends that the Contested Property is exempt under C.C.P. § 704.020 because they are ordinarily and reasonably necessary for her use at her principal place of residence. The Trustee argues that the Contested Property falls within the purview of § 704.040, as they constitute works of art. As such, they cannot be claimed as exempt because their aggregate value and equity exceed $2,500, the Undisputed Property claimed under the statute having a value and equity of $2,492.50.

The Trustee's case is predicated on the description of the Contested Property set forth by Ms. Crosby in her schedules initially filed with the court, asserting that these descriptions constitute admissions that meet the requirements of § 704.040. No evidence, independent of these descriptions, however, was presented by the Trustee.

Ms. Crosby correctly points out that subsequently she amended her initial schedules describing these items as household goods and furnishings. Having filed a voluntary petition, Ms. Crosby is permitted to amend her schedules as a matter of course at any time prior to the closing of the case. Rule 1009(a), Fed.R.Bankr.[9]

The court finds that the Trustee's reliance upon the bare description of the items, as set forth in Ms. Crosby's initial schedules, without further evidence, does not satisfy the Trustee's burden of establishing that the

---

9. Rule 1009(a), F.R.Bankr.P. provides in pertinent part:
 *(a) General Right to Amend.* A voluntary petition, list, schedule, or statement may be amended by the debtor as a matter of course at any time before the case is closed.

items in question do not qualify for exemption under § 704.020. Nor has the Trustee presented evidence which would persuade the court that the items in question fall within the provision of § 704.040.[10]

### Ms. Crosby Is Not Required To Turn Over To The Trustee For Sale Items Found To Qualify For Exemption Under C.C.P. § 704.040

■ The Trustee has requested an order requiring Ms. Crosby to turn over all property which qualifies for exemption under § 704.040 in order that he may sell it. The Trustee argues that he is entitled to take possession and sell such exempt property, Ms. Crosby being entitled only to the monetary sum of $2,500.00 upon its sale.

The Trustee's request is denied. Initially, as a practical matter, there is no reason to require a turnover and sale, as the only property that qualifies for exemption under § 704.040 is the Stipulated Property amounting to $2,450.50. A sale of this property would not produce any monetary sum that would be available for distribution to unsecured creditors.

However, more fundamentally, the Trustee's request is unsupported by any statutory or case authority. A plain reading of Section 704.040 reflect that the turnover and sale procedures advocated by the Trustee are absent from the statute, it being limited to the following language:

§ 704.040. **Jewelry, heirlooms, and works of art**

Jewelry, heirlooms, and works of art are exempt to the extent that the aggregate equity therein does not exceed two thousand five hundred dollars ($2,500).

In support of his request, the Trustee erroneously analogizes to the California Homestead Exemption. The Ninth Circuit in the case of *In re Reed*, 940 F.2d 1317, 1321 (1991), described the California Homestead Exemption as follows:

■ California does not permit a debtor to exempt his entire interest in a homestead, but specifically limits the dollar amount up to which a homestead exemption can be claimed. Cal.Civ.Proc.Code § 704.730(a). The language of the relevant statutes makes it clear that the "homestead exemption" in California is merely a debtor's right to retain a certain sum of money when the court orders sale of a homestead in order to enforce a money judgment; it is not an absolute right to retain the homestead itself. *See, e.g.*, Cal. Civ.Proc.Code § 704.720(b), which states, "If a homestead is sold under this division ... the *proceeds of sale* ... are exempt in the amount of the homestead exemption provided in Section 704.730".

See also *In re Hyman*, 967 F.2d 1316, 1318 (9th Cir.1992).

Unlike the relevant statutes relating to the California Homestead Exemption, the exemption described in C.C.P. § 704.040 makes no reference to proceeds of sale being exempt, nor any turnover and sale procedures.

The contents of this Memorandum shall constitute this court's Findings of Fact and Conclusions of Law.

---

10. On the basis of description alone, it would appear that such items as Oak Frame Mirror; Frosted Glass Vase; Drum; Wood Secretary Desk; Cotton and Wool Rug; Blown Glass Bowl; and Lynx Fur Coat do not qualify as "jewelry, heirlooms and works of art."

See also *In re Lucas*, 62 B.R. 949, 951–952 (Bankr.S.D.Cal.1986) where the court found that hanging pictures, drawings and paintings are included as household furniture under C.C.P. § 704.020,

"not because they are suitable for physical use, but because they contribute to the pleasure and comfort of the owner and perhaps to his pride of ownership. In the eyes of the law, they are no less necessary than a chair or rug."

The court also determined that figurines were exempt under § 704.020, being common pieces of household art.