Filed 10/10/14  The Mechanics Bank v. Kontrabecki CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE MECHANICS BANK,<br><br>　　　　Plaintiff and Respondent,<br><br>v.<br><br>JOHN T. KONTRABECKI et al.,<br><br>　　　　Defendants and Appellants. | A139531<br><br>(San Francisco County<br>Super. Ct. No. CGC11509788) |

**INTRODUCTION**

Plaintiff The Mechanics Bank (Bank) obtained a money judgment against defendants John T. Kontrabecki and the JTK Trust.  The Bank thereafter levied a writ of execution on approximately $2.8 million held in a deposit account maintained by Boston Private Bank & Trust Company (Boston Private).  Defendants objected, claiming the monies levied on were statutorily exempt from execution as proceeds of a "private retirement plan" under section 704.115 of the Code of Civil Procedure (section 704.115).  After taking evidence, the trial court denied defendants' claim of exemption.  We affirm.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Defendants and TKG California I, LLC (TKG)[1] guaranteed repayment of a loan made by the Bank to Tri-Valley Vineyards, LLC (Tri-Valley) pursuant to written commercial guaranties that they executed in favor of the Bank.  After the loan to Tri-

---

[1] Kontrabecki is president of The Kontrabecki Group Inc., which is the managing member of TKG.

1

Valley went into default, the Bank made a demand for payment on defendants for the amounts owed under their commercial guaranties.

On April 1, 2011, the Bank filed a complaint for breach of written guaranty against defendants and TKG. The Bank sought the principal sum of $2,175,902.58 plus accrued interest, late charges, attorneys' fees and costs, and other fees and costs due.

On April 25, 2012, the trial court granted the Bank's motion for summary judgment.

On August 6, 2012, an amended judgment was entered against defendants in excess of $3,500,000.

On April 8, 2013, the trial court issued a writ of execution against defendants for $3,811,026.

On April 12, 2013, the Bank levied a writ of execution on Boston Private on all accounts in the name of defendants.

On April 24, 2013, defendants filed a claim of exemption. They sought to exempt from levy $2,977,961.88 in cash on deposit in an account at Boston Private standing in the name of the JTK Trust. Among the claims for exemption, defendants asserted the funds were the principal of a private retirement plan exempt under section 704.115.

On May 8, 2013, the Bank filed its opposition to the claims of exemption.

On June 10, 2013, the trial court issued an amended order denying defendants' claims of exemption. This appeal followed.

## DISCUSSION

### I. Standard of Review

"Orders granting or denying a claim of exemption are appealable. [Citation.] A judgment or order of the trial court is presumed correct, and must be upheld if it is supported by substantial evidence, no matter how slight it may be. [Citation.] Further, all evidence must be viewed in the light most favorable to the prevailing party, and all conflicts in evidence or in inferences must be resolved in favor of upholding the trial

court's judgment or order. [Citations.] Where sufficiency of the evidence is questioned, the duty of an appellate court begins and ends with a determination that there is in the record evidence legally sufficient to support the judgment or order. [Citation.] Where there is no conflict in the evidence, or an issue is presented on appeal upon undisputed facts, the appellate court is free to draw its own conclusions of law." (*Schwartzman v. Wilshinsky* (1996) 50 Cal.App.4th 619, 626 (*Schwartzman*).) "[E]xemption statutes should be construed, so far as practicable, to the benefit of the judgment debtor." (*Id.* at p. 630.)

## II. Section 704.115

Section 704.115 exempts from levy "[a]ll amounts held, controlled, or in process of distribution by a private retirement plan, for the payment of benefits as an annuity, pension, [or] retirement allowance . . . ." (Code Civ. Proc., § 704.115, subd. (b).) The statute defines several different kinds of exempt retirement plans. "The purpose of this exemption is to safeguard a source of income for retirees at the expense of creditors. [Citation.]" (*Yaesu Electronics Corp. v. Tamura* (1994) 28 Cal.App.4th 8, 13 (*Yaesu*).)

One kind of exempt private retirement plan is a "private retirement plan." (§ 704.115, subd. (a).)[2] At first blush, this is an "unhelpful tautological definition." (*In re Barnes* (Bankr. E.D.Cal. 2002) 275 B.R. 889, 896 (*Barnes*).)[3] Courts have straightened out the circularity by gleaning additional elements of an exempt plan. First, "section 704.115(a)(1) applies only to retirement plans set up by private employers, 'not

---

[2] Section 704.115, subdivision (a)(1) provides: "As used in this section, 'private retirement plan' means: [¶] . . . Private retirement plans, including, but not limited to, union retirement plans."

[3] "California has enacted legislation 'opting out' of the federal bankruptcy exemption scheme . . . ." (*In re Simpson* (9th Cir. 2009) 557 F.3d 1010, 1014.) And "the Bankruptcy Act permits an individual debtor to exclude from the bankruptcy estate property exempted by applicable state law." (*Yaesu, supra,* 28 Cal.App.4th at p. 14, fn. 4.) Thus, federal bankruptcy courts often apply California exemption statutes, and California courts often turn to federal decisions. (See *id.* at pp. 13-14 [relying on federal cases]; *Schwartzman, supra,* 50 Cal.App.4th at pp. 628-629 [discussing federal cases].)

by individuals acting on their own, outside of the employment sphere.' " (*In re Simpson* (9th Cir. 2009) 557 F.3d 1010, 1018 (*Simpson*).) Second, a plan is not "exempt merely by virtue of its name." (*In re Bloom* (9th Cir. 1988) 839 F.2d 1376, 1378 (*Bloom*).) It must be actually "used and designed for retirement purposes." (*Ibid*.; accord, *Yaesu, supra,* 28 Cal.App.4th at p. 14.) These additional elements make sense because "the amount exemptible in a private retirement plan under section 704.115(a)(1) is unlimited," instead of being "limited to what is necessary to support a debtor." (*Barnes, supra,* 275 B.R. at pp. 896-897.) Without the "private employer" and "designed and used for retirement" requirements, debtors could shield their every penny by unilaterally dubbing their bank accounts "retirement plans." (See *id*. at p. 897.)

### III. *Facts Pertaining to the Levied Account*

In 1984, Kontrabecki formed a company called Kontrabecki Associates I, L.P (KAI). He was the company's general partner and sole employee. Carl Berg and Clyde Berg (the Bergs) were investors and limited partners.

In 1998, KAI agreed to reorganize to become Mission West Properties, L.P. III (MWLP) as part of a plan to create a real estate investment trust. Kontrabecki and the Bergs executed an "Amended and Restated Agreement of Limited Partnership of Mission West Properties, L.P. III" (MWLP Agreement). Kontrabecki resigned as general partner and Mission West Properties, Inc. (MW Inc.) became the general partner. Kontrabecki and the Bergs were designated as limited partners.

In December 1998, MWLP entered into an Exchange Rights Agreement with MW Inc. whereby the limited partners of MWLP acquired the right to exchange one limited partnership unit in MWLP for one share of stock in MW Inc.

In 2007, defendants entered into an agreement with the predecessor-in-interest to Boston Private for a $6,000,000 loan secured by defendants' interest in MWLP. In connection with this pledge agreement, the JTK Trust delivered to Boston Private a letter stating that the JTK Trust, and not Kontrabecki, was a limited partner in MWLP.

Defendants defaulted under the terms of that loan, which resulted in defendants and Boston Private entering into a series of forbearance agreements.

In December 2012, the JTK Trust exercised its rights as a limited partner under the 1998 Exchange Rights Agreement to exchange its limited partnership interest in MWLP for shares of stock in MW Inc. In the interim, MW Inc. had entered into an agreement with an entity known as Divco West to sell most of its real estate assets pursuant to a plan to liquidate MW Inc. and to place all of its assets into a liquidating business trust known as the Mission West Liquidating Trust (MW Trust). Before it dissolved, MW Inc. transferred all of its cash from the sale of assets to Divco West into the MW Trust, an approximate sum of $8.99 million.

On January 18, 2013, the Bank levied a writ of execution on the MW Trust.

On April 10, 2013, a stipulation was entered into by and between the Bank, defendants, Boston Private, and the MW Trust. The stipulation provided that the money being held by MW Trust on behalf of defendants would be wire-transferred to a demand deposit account (referred to as the "Reserve Account") at Boston Private. Boston Private would then be entitled to withdraw from the Reserve Account amounts owed to it by defendants under the loan documents and forbearance agreements. Thereafter, the Bank filed the writ of execution that is the subject of this appeal.

## IV. *Evidence of a "Private Retirement Plan" Is Lacking*

Defendants assert the trial court erred in denying their claim of exemption, as "the uncontradicted and unimpeached evidence shows Mission West Properties L.P. III was a private retirement plan . . . ." As we discuss below, this contention is unpersuasive.

Kontrabecki's declaration submitted to the trial court in support of his claim of exemption states that by entering into the MWLP Agreement, KAI "created a private retirement plan for [Kontrabecki] managed by [MWLP]." He claimed that this was his "*principal purpose* for entering into this arrangement." (Italics added.) As "evidence" in support of the existence of an exempt retirement plan, defendants' brief on appeal cites

5

only to Kontrabecki's subjective intent to utilize the assets held in the MW Trust as his retirement plan. Significantly, there are *no* references in the MWLP Agreement to *any* retirement plans.[4] To the contrary, Section 3.1 of the MWLP Agreement states the partnership's purpose "is to conduct any business that may be lawfully conducted by a limited partnership . . . including, without limitation, to engage in the following activities: to acquire, hold, own, develop, construct, improve, maintain, operate, sell, lease, transfer, encumber, convey, exchange and otherwise dispose of or deal with the Properties, and the Pending Development Projects . . . ."

Funds are not exempt under section 704.115 solely because the debtor declares he or she intends to use the funds for retirement purposes. (*In re Phillips* (Bankr. N.D.Cal. 1997) 206 B.R. 196, affd. (N.D.Cal. 1998) 218 B.R. 520.) Rather, funds so designated must be principally used for retirement purposes. (*In re Daniel* (9th Cir. 1985) 771 F.2d 1352, 1356-1358, cert. den. (1986) 475 U.S. 1016, distinguished on other grounds in *Patterson v. Shumate* (1992) 504 U.S. 753, 757, fn. 1; *In re Jacoway* (Bankr. 9th Cir. 2000) 255 B.R. 234, 238-239 (*Jacoway*).) In deciding if the principal purpose of the funds is for retirement purposes, the court is to consider all relevant facts. (*Jacoway, supra,* 255 B.R. at pp. 239-240; *Yaesu, supra,* 28 Cal.App.4th 8 at pp. 12-15; *Bloom, supra,* 839 F.2d 1376 at p. 1379.) The debtor asserting a claim of exemption has the burden of proof. (Code Civ. Proc., § 703.580, subd. (b).)

Kontrabecki's alleged intent to use the MW Trust as his retirement plan is not controlling. As the Ninth Circuit has noted, "a debtor's subjective intent for or use of the asset is irrelevant to this analysis. [Citation.] Rather, section 704.115(a)(1) applies only to retirement plans set up by private employers, 'not by individuals acting on their own, outside of the employment sphere.' [Citations.] As we explained in [*In re*] *Lieberman* [*v. Hawkins* (9th Cir. 2001) 245 F.3d 1090, 1095]: [¶] ['][T]he legislature intended

---

[4] As the Bank notes, none of the other relevant documents summarized above contain any reference to a private retirement plan.

6

[section] 704.115(a)(1) to exempt only retirement plans established or maintained by private employers or employee organizations, such as unions, not arrangements by individuals to use specified assets for retirement purposes. [Citation].[']" (*Simpson, supra,* 557 F.3d at pp. 1018-1019.) Defendants did not show the monies in the MW Trust were proceeds from a plan that was actually "used and designed for retirement purposes." (*Bloom, supra,* 839 F.2d at p. 1378.) While there is no "uniform test or a comprehensive list of relevant factors" on this point (*id.* at p. 1379), defendants offered *no* objective evidence supporting their claims.

Defendants' legal arguments are also unconvincing. For example, they rely on *Bloom, supra,* for the proposition that a retirement plan does not need to be labeled as such to qualify for the exemption. The actual holding of *Bloom,* however, is that a plan may be deemed ineligible for exemption *even if it is* labeled as a retirement plan: "Without regard to its label, a plan not used and designed for retirement purposes is not a retirement plan." (*Bloom, supra,* 839 F.2d at p. 1378.) Thus, the case does not stand for the proposition defendants advance.

Similarly, defendants claim Kontrabecki's retirement plan meets the standards set forth in *Yaesu, supra,* because an exemption does not depend on "compliance or non-compliance with any pertinent Internal Revenue Service rules in creating a private retirement plan." As used in cited cases, however, the proposition was that "neither the debtor's mere compliance with the pertinent IRS rules in creating the private retirement plan nor the debtor's designation of the asset as a private retirement plan translates to an automatic exemption from execution." (*Yaesu, supra,* 28 Cal.App.4th at p. 13.) Instead, the relevant inquiry is whether the plan has actually been designed and used for retirement purposes. (*Id.* at p. 14.) The case *does not* stand for the proposition that evidence of compliance with IRS rules or designation of the asset as a private retirement plan is irrelevant. Thus, defendants' arguments, which essentially highlight all the relevant evidentiary factors that are missing to support their claims, are inapposite.

7

In view of the foregoing, we conclude substantial evidence supports the trial court's order denying defendants' claims of exemption.  The court was not bound to accept Kontrabecki's conclusory representations on their face.  Section 704.115 requires a party to support his exemption claims with actual evidence regarding the account and his finances.  Again, this is because a "debtor's subjective intent cannot create an exemption . . . ." (*Simpson, supra,* 557 F.3d at p. 1018.)  While the statute "should be construed, so far as practicable," to his benefit (*Schwartzman, supra,* 50 Cal.App.4th at p. 630), it cannot be bent beyond its breaking point.

## DISPOSITION

The orders are affirmed.  The Bank shall recover its costs on appeal.  The matter is remanded to the trial court for determination with respect to an award of attorney fees for legal services rendered on appeal.


_____

Dondero, J.


We concur:


_____

Humes, P.J.


_____

Margulies, J.