**In re Charles PHILLIPS and Jean Phillips, Debtors.**

**Bankruptcy No. 96–33445BDM.**

United States Bankruptcy Court, N.D. California.

March 4, 1997.

As Corrected March 17, 1997.

---

Matthew J. Shier, Poppin & Shier, San Francisco, CA, for Charles & Jean Phillips, Debtors.

Tobias S. Keller, Murphy, Weir & Butler, San Francisco, CA, for Scott & Kevin Mayer, Objecting Parties.

## MEMORANDUM DECISION

DENNIS MONTALI, Bankruptcy Judge.

### I. *Introduction*

This case involves a clash of policies, pitting a tradition of generous California exemptions and a liberal attitude in favor of debtors who claim them against the time-honored notion that a person may not enjoy the use of his or her assets through a personal trust that attempts to insulate those assets from the trustor's creditors. This case also appears to be one of first impression, testing the limits of that liberal exemption policy by asking whether the court will permit debtors to create an exemption all by themselves, virtually out of whole cloth, under the guise of a "private retirement plan." The parties have not presented the court with any reported cases that go as far as the debtors wish. Were the court to adopt the debtors' theory of this case, it might just as well inform California creditors that there will be no more enforcement of judgments against individual debtors since all those debtors

need to do to frustrate their creditors' efforts is claim that they have planned the use of their assets for their later (retirement) years. The court will not do that.

Although debtors claim another time-honored right, namely the freedom to convert in good faith non-exempt assets to exempt assets on the eve of bankruptcy, they have no exemption available to them at all through what they call their private retirement plan; if they do, their plan was not designed and used for retirement purposes and cannot help them here.

## II. *Proceedings*

A trial was conducted on January 3, 1997 in this Chapter 13 case on objections filed by Scott and Kevin Mayer (collectively "the Mayers") to confirmation of the Chapter 13 plan filed by Charles Phillips and Jean Phillips ("Debtors"). Trial was limited to the claim by Debtors that their Phillips Retirement Plan and Phillips Retirement Trust (together the "Retirement Plan") was exempt under California law. The parties agreed that the determination of the exemption issue would influence whether or not the balance of Mayers' objections to confirmation of the Chapter 13 plan should be tried promptly or whether Debtors would have to revise their plan for further consideration.

Debtors appeared and were represented by Matthew J. Shier, Esq. of Poppin & Shier; Mayers appeared and were represented by Tobias S. Keller, Esq. of Murphy, Weir & Butler.

As indicated above, after reviewing the oral and documentary evidence presented and the pre- and post-trial authorities submitted by the parties, the court will sustain the Mayers' objections for the reasons stated below.[1]

## III. *Facts* [2]

As of the date of trial, Debtor Charles Phillips was 64 years old and self-employed. His wife, Jean Phillips, was 58 years old and employed as a registered nurse. They have been married for approximately 23 years and have no children.

Debtors purchased their first home, 1022 Powell Street, No. 1, San Francisco, California ("Powell Street") in 1977; they sold Powell Street to the Mayers in 1988. In 1986, Debtors purchased their current residence at 170 Ninth Avenue, San Francisco, California ("Residence").

Debtors contend that as early as 1977 they adopted an "informal retirement plan." There is no writing to evidence this intent and over the years they used several of the assets they purportedly transferred informally to this plan for a variety of purposes, none directly related to their retirement.

In 1985, Debtors executed the Charles and Jean Phillips Revocable Trust (the "Revocable Trust"), which was essentially a probate avoidance device and a technique for estate planning. There is nothing about retirement mentioned in the Revocable Trust. Rather, while Debtors (as trustors) are both alive, the Revocable Trust provides for them to reach the income and the principal of the trust for numerous non-retirement purposes.[3] They did not use the Revocable

---

**1.** Objections to exemptions are not the most direct way for a creditor to challenge confirmation of a Chapter 13 plan. Where exemptions are questioned, the more appropriate procedure is for the creditor to show that the value to be distributed under the plan on account of allowed unsecured claims is less than the amount that would have been paid if the debtor's estate were liquidated under Chapter 7. 11 U.S.C. § 1325(a)(4). The parties have agreed, however, that the court should consider the propriety of the claimed exemptions, not only to aid it and them in determining the "best interests" test of Debtors' Chapter 13 plan, but also because the validity of the claimed exemption would be in issue were the Debtors to dismiss their Chapter 13 case or convert it to Chapter 7.

**2.** The following discussion constitutes the court's findings of fact and conclusions of law. Fed. R.Bankr.P. 7052(a).

**3.** Article III (Distribution of Income and Principal During Trustors' Joint Lifetimes), provides as follows:

A. As long as both Trustors are alive:
(1) The Trustee shall pay to either or both of the Trustors (as their community property) or apply for their benefit, in quarter-annual or more frequent installments, the net income of the community estate and also as much of the principal of the community estate as the Trustee deems appropriate for their support, comfort, health, education and general welfare,

Trust for retirement purposes. Powell Street is identified on Schedule A to the Revocable Trust as a trust asset, but there is no evidence that any deed transferring Powell Street to the trustees of the Revocable Trust was executed and recorded.

After Debtors purchased the Residence in 1986, they did not transfer it to the Revocable Trust. Subsequent to 1985, they used assets purportedly transferred previously for various purposes, including paying insurance expenses, making improvements at the Residence (expending as much as $50,000 for structural work, kitchen remodeling, and the construction of a deck), and paying expenses in connection with the Mayers litigation. At least one mutual fund account said to be in the Revocable Trust was specifically denominated as a "non-retirement account." Debtors did not consistently treat the assets purportedly transferred in 1985 as retirement assets and in fact failed to disclose the existence of any such retirement plan on financial statements subsequently provided to the Mayers.

In 1993, the Mayers discovered facts which caused them to sue to rescind the sale of Powell Street. Thereafter, for approximately 2-1/2 years, the Mayers and Debtors litigated that action in the Superior Court of San Francisco. On March 29, 1996, that court issued a tentative decision against the Debtors[4] and notified Debtors that it would enter judgment in favor of the Mayers. Not long after receipt of the tentative decision, Debtors consulted with Poppin & Shier, a San Francisco bankruptcy law firm; not long after that consultation, Debtors consulted an estate planning specialist in the San Francisco law firm of Steinhart & Falconer. The

documents creating the Retirement Plan were prepared and executed shortly thereafter.

The Retirement Plan is reflected in two documents, the Phillips Retirement Plan and the Phillips Retirement Trust. In those documents, Debtors are the participants, the sponsors, the administrators and the trustees of the Retirement Plan. Unlike the situations in numerous cases relied on by Debtors, there are no third parties who played any role in the implementation and operation of the Retirement Plan. Also, unlike the facts of those cases, no assets were used to fund the Retirement Plan other than assets of the Debtors, all of which presumably were subject to the claims of creditors (including the Mayers), subject only to proper exemptions available to Debtors.

On or about April 25, 1996, Debtors transferred the Residence[5] and marketable investments to the Retirement Plan. According to Schedules C and D, the Residence has a value of $350,000 and is subject to a deed of trust in favor of Union Bank securing a debt of $39,226. Of the Debtors' equity, $75,000 is claimed as exempt as a homestead under California Code of Civil Procedure section 704.710, with the balance ($216,481) claimed as exempt as a private retirement plan under Code of Civil Procedure section 704.115. The other assets in the Retirement Plan, characterized as being in various mutual funds and related investments, have a value of $74,308 as of the petition date.

The Residence is not a revenue or income producing asset as it is occupied by Debtors, who maintain it as their primary residence.

---

taking into account their accustomed standard of living and the availability to them of other resources.

**4.** The court stated, in part:

"The misrepresentations that have been found on the part of the [debtors] constitutes (sic) negligent misrepresentation and (sic) recognized as actionable fraud under California law (Civil Code § 1572(2)) which conduct the Court concludes justifies the remedy of rescission." Memorandum of Decision, p. 7.

The court entered its Judgment After Trial By Court on July 17, 1996. As of July 22, 1996, the Mayers obtained an Abstract Of Judgment re-

flecting an amount owed to them as of that date of $411,079.56.

**5.** The Grant Deed transferring the Residence from the Debtors, husband and wife, as joint tenants, to themselves as trustees of the Phillips Retirement Trust, dated April 24, 1996, conveys the Residence "reserving therefrom, however, the duly recorded homestead interest in said real property, as evidenced by recorded Phillips homestead declaration." Thus, Debtors attempted to reserve their homestead amount outside of the Retirement Plan, and to exempt the balance of the value of the Residence in the Retirement Plan.

They do not pay any rent to themselves as trustees of the Retirement Plan although they do pay the mortgage payments on the Residence. Under the terms of the Retirement Plan, the assets therein are reachable upon Charles Phillips' 65th birthday, February 16, 1997.

According to Debtors, the purpose of the transfers of assets to the Retirement Plan was to have the assets there and available. In their mind, transfer of substantial assets to the Retirement Plan seemed the prudent thing to do. In fact, Mrs. Phillips expressly conceded that funds were put into the Retirement Plan "to protect them" as they were in jeopardy.

Debtors filed their voluntary Chapter 13 petition on August 7, 1996.

As things stand today the Retirement Plan contains all but approximately $25,000 of the Debtors' assets, the latter amount having been expressly withheld in anticipation of filing bankruptcy to deal with creditors in the Chapter 13 case. No additional contributions to the trust are likely [6] and the Debtors project selling the Residence in the year 2003, investing the net proceeds and living on the income produced by the investments in the Retirement Plan, together with whatever is available to them as social security benefits.

### IV. *Discussion*

The critical question for the court to decide is whether the Retirement Plan constitutes a "private retirement plan" as provided in subparagraph (1) of California Code of Civil Procedure section 704.115(a) ("Section 704.115"), which section curiously and unhelpfully defines "private retirement plan" as a "Private retirement plan". There apparently is no legislative history to help the court determine whether Debtors may create such a plan entirely on their own.

Subparagraph (b) of Section 704.115 provides that:

> All amounts held ... by a private retirement plan, for the payment of benefits as an annuity, *pension, retirement allowance* ... from a private retirement plan are exempt. (Emphasis added.)

If the Retirement Plan is a "private retirement plan" under Section 704.115, the next question is whether the Retirement Plan was "designed and used" for Debtors' retirement purposes. *Bloom v. Robinson (In re Bloom)*, 839 F.2d 1376 (9th Cir.1988); *Daniel v. Security Pacific National Bank (In re Daniel)*, 771 F.2d 1352 (9th Cir.1985); *Yaesu Electronics Corp. v. Tamura*, 28 Cal.App.4th 8, 33 Cal.Rptr.2d 283 (1994). If both questions are answered in the affirmative, then all assets in the Retirement Plan are exempt.[7]

### a. *The 1977 and 1985 Activities.*

■ Preliminarily, the court must determine whether the 1977 informal retirement plan and the Revocable Trust are of any legal significance. The court rejects both of those devices as irrelevant to the issues at hand. First, the informal retirement plan was nothing more than Debtors deciding that they wanted to keep their assets for themselves. There was no "plan" involved at all. At best, there was a recognition by two people that they wanted to keep their own assets, a rather normal reaction of almost anyone, particularly someone who did not then and do not now have children or other family members for whom they might set up some sort of schedule for gifting excess as-

---

6. In the Phillips Retirement Plan, Section 3.01. *Sponsor Contributions*, provides, in part, the "Sponsor shall make such contributions to Plan for the benefit of the Participants ... from time to time and in such amounts as the Sponsor shall determine." The Phillips Retirement Trust, in Article I, A. *Establishment of Trust*, provides, in part, the "Sponsor shall make contributions in such manner and at such times as shall be appropriate."

   Based upon the unequivocal testimony that there would be no further contributions to the Retirement Plan, these words found in the Retirement Plan are virtually meaningless and undermine any notion that the Retirement Plan is a true private retirement plan that has been declared exempt by the California Legislature.

7. The Mayers have stipulated with Debtors that the amount in the Retirement Plan is not at issue. No actuarial evidence was submitted to determine if the value in the Retirement Plan is excessive. In other words, as a matter of law the amount is "reasonably necessary" for Debtors' retirement.

sets as they advance in years. Nor have Debtors presented any evidence of any philanthropic tendencies either in 1977, 1985 or 1996, any one of which might have established a pattern of recognizing that some assets might intentionally be rendered unavailable to them in their later years. In other words, the statement that Debtors intended to retain their assets for their retirement is tantamount to saying they intend to keep those assets from their creditors.

■ By 1985 some manifestations of Debtors' intent at least was reduced to writing, but the evidence is convincing that they created the Revocable Trust for estate planning purposes. They were very informal about how they dealt with assets included in the Revocable Trust. Even if by stretching the stated purposes as of 1985 (see footnote 3) to their litigation position in 1997 that this was an exempt private retirement·plan, the Debtors did not treat the assets in that trust as part of any actual retirement plan. In any event, for many of the same reasons the Retirement Plan is not held to be a private retirement plan, the Revocable Trust fails as well.

b. *The Self–Settled Trust.*

■ The Retirement Plan is a self-settled trust in that the Debtors as settlors or trustors are the beneficiaries. As such, unless exempt by Section 704.115, the assets in that Retirement Plan are just as vulnerable to the claims of Debtors' creditors, including the Mayers, as they were before they were transferred. *Nelson v. California Trust Co.,* 33 Cal.2d 501, 502, 202 P.2d 1021 (1949); *Yaesu Electronics Corp. v. Tamura,* 28 Cal. App.4th 8, 33 Cal.Rptr.2d 283 (1994); *Brownell v. Kilian (In re Schneider's Estate),* 140 Cal.App.2d 710, 296 P.2d 45 (1956). The California Supreme Court in *Nelson* stated it most succinctly and most emphatically:

"It is against public policy to permit a man to tie up his property in such a way that he can enjoy it but prevent his creditors from reaching it." 33 Cal.2d at 502, 202 P.2d 1021 (1949).

The California Legislature confirmed the rule of *Nelson* in California Probate Code section 15304(a) which states, in part:

If the settlor is a beneficiary of a trust created by the settlor and the settlor's interest is subject to a provision restraining the voluntary or involuntary transfer of the settlor's interest, the restraint is invalid against transferees or creditors of the settlor.[8]

The Retirement Plan fits squarely within the reach of Probate Code section 15304(a), since the Phillips Retirement Plan contains a typical spendthrift provision.[9]

Debtors argue that the application of California Probate Code section 15304(a) to this case will destroy the exemptions of all individual tax-qualified plans such as "... IRA's and *self-employed retirement plans* (most of which are self-settled, self-administered and self-controlled) ..." (emphasis added). (Debtors' Post Trial Memorandum, p. 3, 11. 23–25). Debtors' concern about self-employed retirement plans and the possible loss of protection under Section 704.115(a)(3) is misplaced. That subsection refers to "individual retirement annuities or accounts" and not to "self-employed retirement plans" as suggested.

Individual Retirement Accounts ("IRA's") must have banks or others as trustees (26 U.S.C. § 408(a)(2)) and thus the evils dealt with nearly fifty years ago in *Nelson,* and visited by the California Legislature in its 1991 amendments to the California Probate Code, are not present.

> "The right of any participant or beneficiary to any benefit or payment under the Plan shall not be subject to voluntary or involuntary transfer, alienation or assignment, and, to the fullest extent permitted by law, shall not be subject to attachment, execution, garnishment, sequestration or legal or equitable process."

---

**8.** Former Probate Code section 15304(a), added by 1986 Cal.Stat. Ch. 820, § 40 was repealed verbatim in 1990 enactment of the California Probate Code (Stats.1990, c. 79 (A.B. 759)), § 14, operative July 1, 1991. The Law Revision Commission Comment to that section cites *Nelson* with approval.

**9.** Section 15.02. *Inalienability Of Benefits,* provides in part:

IRA's quite obviously are created and controlled by the individuals who claim them as exempt, but the California Legislature has distinguished between IRA's in Section 704.115(a)(3), where there is a limitation (to the extent necessary to provide support, etc.) on the amount exempt under Section 704.115(e) [10] and private retirement plans and Internal Revenue Code section 403b retirement plan annuities exempt under Section 704.115(a) or (b).[11] The Internal Revenue Code strictly limits how much ($2,000) an individual may contribute in any taxable year (26 U.S.C. § 408(a)(1)). Creditors are thus protected by the amount of assets a debtor may shelter in an IRA each year, and protected again by how much can be exempted once those assets become subject to the claims of creditors. By permitting Debtors to claim as exempt tax sheltered trusts that they control, the California Legislature in no way intended debtors to transfer substantially all of their assets to such a trust in order to claim them as exempt.

Debtors also rely on numerous cases involving individuals who enjoy the benefits of section 704.115(a) via their own private retirement plans. But those cases all involve third parties, even though in some cases those third parties are wholly-controlled professional corporations of the debtors. *In re Bloom, supra*, involved a corporate retirement plan created eight years prior to bankruptcy. The debtor was one of two owners of the medical corporation that created the plan. In *In re MacIntyre, supra*, the debtors were two married physicians employed by a non-profit hospital that withheld from their paychecks contributions to an Internal Revenue Code § 403b retirement annuity. *In re Witwer*, 148 B.R. 930, 939 (Bankr. C.D.Cal.1992), concerned the debtor's own medical professional corporation as did *In re Cheng*, 943 F.2d 1114, 1116 (9th Cir.1991). In *In re Crosby*, 162 B.R. 276 (Bankr. C.D.Cal.1993), the debtor claimed exempt

her interest in a profit sharing plan established by her wholly-owned corporation, CAT Productions.

More importantly, none of the cases relied on by Debtors involves assets which, prior to the transfer into the Retirement Plan, were available to satisfy the claims of the debtor's creditors. Absent some indication that assets found in those various plans were ever available to the creditors of the debtors in those cases, these decisions simply are not on point here.[12] Accordingly, the court concludes that Debtors' Retirement Plan is a self-settled trust as identified and condemned by *Nelson* and California Probate Code section 15304(a).

#### c. *Private Retirement Plan.*

■ As noted above, the California Legislature has not defined a "private retirement plan" as the term is used in Section 704.115 in any meaningful way. First, from the context of the statute, it is evident that the Legislature had in mind plans involving third parties since the statute refers, by way of example, to "union retirement plans." If it intended to exempt assets that debtors simply declare to be intended for retirement (as Debtors have done) it could have said so without reference to "plans." It could have simply declared as exempt all assets a debtor intends to use for retirement.

■ Further, California Probate Code section 82(b)(13) exempts from the self-settled rule trusts for the primary purpose of paying salaries, wages, profits, pensions or employee benefits of any kind. Treating those Probate Code sections and Section 704.115 in a consistent manner leads to only one plausible conclusion, namely that plans providing for salaries, wages, profits, pensions or employee benefits are not the kind of devices identified by *Nelson* and reachable by creditors under Probate Code section 15304(a).

**10.** See *In re Vigghiany,* 74 B.R. 61 (Bankr. S.D.Cal.1987).

**11.** See *In re MacIntyre,* 74 F.3d 186 (9th Cir. 1996).

**12.** Debtors' Post–Trial Brief attempts to suggest that this case is similar to other "self-settled, self-

controlled, and self-administered retirement plans," citing *Cheng, Witwer, Crosby,* and *Vigghiany.* As stated, this case is not similar, since none of those cases involves self-settled retirement plans involving the same person(s) as sponsor, trustee, administrator and beneficiary.

As recognized by the parties in their briefs, the Ninth Circuit has been active in shaping the limits of Section 704.115. *MacIntyre*, holds that the purpose of that section is to safeguard a stream of income for retirees. *MacIntyre*, 74 F.3d at 188; *Crosby*, 162 B.R. at 283. Here the Debtors' Retirement Plan has no stream of income in any meaningful sense; at best the future liquidation of the Residence, reinvestment of its net proceeds, and dividends from the mutual funds might provide a source of revenue several years into the future, but it hardly can be said to provide payment of pensions or employee benefits since its sponsors had no employees and were obligated to pay no pensions. The Retirement Plan resembles in name only a private retirement plan intended for such purposes; names alone are not controlling. *Bloom*, 839 F.2d at 1378.

#### d. *"Designed and Used" For Retirement Purposes.*

In determining that a private retirement plan must be intended for such purposes, the Ninth Circuit in *Bloom:*

> Emphasize[d] that [it was] not creating a uniform test or a comprehensive list of relevant factors. All factors are relevant; but no one is dispositive. Rather, all of them must be considered in light of the fundamental inquiry—whether the plan was designed and used for a retirement purpose.

*Bloom*, 839 F.2d at pp. 1379–1380; quoted in *Yaesu*, 28 Cal.App.4th at 14, 33 Cal.Rptr.2d 283.

The facts are overwhelming that Debtors designed and used the Retirement Plan, not to provide for their later years, but to frustrate the Mayers in the enforcement of their state court judgment. In *Daniel*, the Ninth Circuit stated unequivocally that the shielding of assets is clearly not a proper retirement purpose. *Daniel*, 771 F.2d at 1358. Debtors have already shielded as much of their Residence as they could by their claimed homestead (see footnote 5), and their

attempt to transfer only the equity in excess of the homestead amount to the Retirement Plan creates the powerful inference that they were attempting to shield the asset from creditors rather than positioning that asset for the enhancement of their retirement needs. Furthermore, the expenditure of funds in the Retirement Plan and the Revocable Trust for legal defense and other expenses of the Debtors is inconsistent with the utilization of those plans for retirement purposes.[13]

#### e. *No Shelter Of Proceeds Of Fraud.*

The Mayers argue that Debtors, having received the Superior Court's decision, created the Retirement Plan and transferred their Residence and other assets into it, thus attempting to protect the proceeds of their fraud. The Residence was purchased by Debtors prior to their sale of Powell Street to Mayers, and thus there is no indication that the Residence represents any proceeds of Debtors' improper conduct viz-a-viz Mayers. As to the mutual fund accounts and other assets transferred into the Retirement Plan, the Mayers have not proven that those assets constituted proceeds of money received from them in connection with the sale of Powell Street in 1988. Thus, the court does not reach the question of whether the assets in the Retirement Plan must be denied their exempt status under cases such as *Sampsell v. Anches*, 108 F.2d 945 (9th Cir. 1939) and *In re White*, 221 F.Supp. 64 (N.D.Cal.1963).

### V. *Conclusion*

██ In view of the foregoing, the Mayers' objections to Debtors' claim of exemption of assets in the Retirement Plan will be sustained. In reaching this result the court does not deprive Debtors of whatever exemptions exist apart from the Retirement Plan. For these purposes the Retirement Plan is a nullity and the assets in it could be reached by a Chapter 7 trustee as though the Retirement Plan did not exist at all. In other

---

**13.** The court does not deem an improper expenditure of Revocable Trust assets the use of funds to improve the Residence. Remodeling, structural repairs, etc. are consistent with such a

purpose. Thus, were the Retirement Plan to be upheld as exempt, the particular expenditures of this nature would not be second guessed by the court. *Bloom*, 839 F.2d at 1379.

words, to the extent Debtors' claims of exemption in the Residence and any other assets in the Retirement Plan are proper in all other respects (without regard to the Retirement Plan), they will be permitted to withstand objection in this case. In reaching this conclusion, the court rejects any contention by the Mayers that Debtors have forfeited their right to exemptions otherwise available to them. This case is neither an objection to discharge such as *Bernard v. Sheaffer (In re Bernard)*, 96 F.3d 1279 (9th Cir.1996), nor a fraudulent conveyance action such as *Reddy v. Gonzalez*, 8 Cal.App.4th 118, 10 Cal. Rptr.2d 55 (1992).

Finally, the court stresses that it is not engaging in a quantitative analysis whereby it disapproves of exemptions that exceed some imaginary dollar amount of reasonableness. It does not, for example, deny the exemptions because the Debtors are more like the debtor in *Daniel* and less like the debtor in *Bloom*. Similarly, the court declines to engage in the kind of analysis criticized by Chief Judge Arnold in his concurrence in *Hanson v. First National Bank in Brookings*, 848 F.2d 866 (8th Cir.1988) and his dissent in *Norwest Bank Nebraska, N.A. v. Tveten*, 848 F.2d 871 (8th Cir.1988). There Judge Arnold found fault with the notion that the court might somehow decide how much could be exempted, gleaning from the amounts at stake the fraudulent intent of the debtor or lack of fraudulent intent by the other debtor. In this case the court does not make such an economic analysis. It simply rejects the notion that a California resident, facing a substantial monetary judgment, can instantly create a retirement plan exemption by declaring such a plan to exist. This would be the court's decision on these facts regardless of the amount at stake.

Concurrent with the issuance of this Memorandum Decision, the court is issuing its Order Sustaining Objections To Exemptions.