Filed 12/11/13

**CERTIFIED FOR PUBLICATION**


**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**


| | |
|---|---|
| In re the Marriage of NATHAN and ROBIN LA MOURE. | |
| NATHAN D. LA MOURE, Appellant, v. ROBIN LA MOURE, Respondent; SAN BERNARDINO COUNTY DEPARTMENT OF CHILD SUPPORT SERVICES, Respondent. | E051856 (Super.Ct.No. SBFSS71194) OPINION |


APPEAL from the Superior Court of San Bernardino County. John M. Pacheco, Judge. Affirmed.

Nathan D. La Moure, in pro. per., for Appellant.

Hanke & Williams, Rick D. Williams and Shelly L. Hanke for Respondent.


1

I

INTRODUCTION[1]

This matter arises out of the dissolution of Nathan D. La Moure's marriage to Robin La Moure and consequential division of assets, including Nathan's defined benefit pension plan (pension plan). Nathan appeals two orders: (1) a July 23, 2010 order restraining disbursements from Nathan's pension plan and (2) a December 1, 2010 order granting reconsideration of the court's October 18, 2010 order, granting Nathan's claim of exemption and motion to quash orders restraining him from transferring assets from his pension plan.

Nathan contends the trial court erred in ordering restraints on his pension plan assets and denying his claim of exemption, because ERISA[2] preempts state law and prohibits alienation of pension plan assets and benefits. Nathan argues that ERISA's anti-alienation provisions prohibit payment of funds from Nathan's pension plan to Robin's attorney for attorney's fees. Nathan further argues that his pension plan is exempt from levy on the writ of execution, and the trial court erred in issuing the writ of execution upon the custodian of the assets of his pension plan. In addition, Nathan

---

[1] On May 4, 2012, Robin filed a motion for augmentation, which this court deemed a request for judicial notice. Robin requests this court to include in the record on appeal the trial court's statement of decision dated September 13, 2011, which indicates that Nathan has numerous assets and sources of income, other than his pension plan. Robin's May 4, 2012, request for judicial notice is denied on the ground the September 13, 2011, statement of decision is irrelevant to the issues raised in the instant appeal.

[2] Employee Retirement Income Security Act of 1974, 29 United States Code section 1001 et seq. (ERISA). All further statutory references are to title 29 of the United States Code unless otherwise indicated.

argues there were no new facts or law justifying granting Robin's motion for reconsideration. Also, the trial court abused its discretion in granting Robin's motion for reconsideration because the new ruling, allowing levy on assets in Nathan's pension plan, violated ERISA.

We reject Nathan's contentions on the ground there was substantial evidence that Nathan abused the pension plan by secreting community property assets and funneling them through the pension plan. As a consequence, Nathan's pension plan was not protected by ERISA. We therefore affirm the judgment.

II

FACTS AND PROCEDURAL BACKGROUND

Nathan and Robin married in 1993, and separated in February 2003. A month later, on March 3, 2003, Nathan filed for divorce. In interim orders in March and April 2003, the trial court ordered Nathan and Robin to share equal custody of their two sons. The court further ordered Nathan, who practiced law as a sole practitioner, to pay Robin spousal and child support.

Nathan fell behind on his support obligations. In April 2009, the California Department of Child Support Services (DCSS) issued an order to Morgan Stanley to withhold funds from Nathan's retirement accounts for the purpose of collecting child support arrears. On April 20, 2009, Nathan filed a claim of exemption and ex parte motion to quash the levy on his Morgan Stanley IRA rollover and IRA accounts.

3

In May 2009, the trial court heard and denied Nathan's claim of exemption and motion to quash/recall the IRA levy. On June 5, 2009, Nathan faxed the DCSS and Robin's attorney a letter stating that Nathan would be filing an ex parte application "to Stay the levy/notice of execution on my Morgan Stanley IRA Rollover plan and to dispense with an undertaking pending appeal of the minute orders of 5/12/09 and 5/27/09 and/or a petition for writ of supersedeas in the reviewing court." The trial court granted a stay until June 29, 2009, and extended the stay until July 31, 2009.

On July 23, 2009, the trial court heard and again denied Nathan's claim of exemption and motion to quash and recall levy on Nathan's Morgan Stanley IRA account for payment of support (support appeal). On July 30, 2009, Nathan filed a notice of appeal of the July 23, 2009 order (*In re Marriage of Lamoure* (2011) 198 Cal.App.4th 807, 812, 830, case No. E048992). On August 31, 2009, Nathan also filed a petition for writ of supersedeas in this court, seeking a stay of the trial court proceedings. On September 3, 2009, this court denied the writ and request for a stay. However, on September 9, 2009, the trial court granted Nathan's request for a stay pending resolution of Nathan's support appeal. On August 2, 2011, this court entered its decision in the support appeal, affirming the lower court's July 23, 2009 order.

**Writ of Execution for Payment of Robin's Attorney's Fees**

Meanwhile, during proceedings from 2003 through 2010, the trial court ordered Nathan to pay Robin's attorney's fees and costs totaling over $99,000.

On March 22, 2010, the trial court heard and granted Robin's order to show cause (OSC) and motions for a writ of attachment, for $10,000 in sanctions against

4

Nathan, for breach of fiduciary duties, for $182,0421.08 in statutory penalties and awards against Nathan, and for reimbursement of Robin's expert fees totaling $15,300.

On March 26, 2010, the trial court issued a writ of execution for payment of Robin's attorney's fees against Nathan's pension plan. Because the writ only named Nathan and his law corporation but did not name his recently created trust[3] as a judgment debtor in the writ, the Morgan Stanley custodian of Nathan's pension plan refused to enforce the writ against the pension plan.

On April 21, 2010, Nathan served a claim of exemption as to Nathan's Morgan Stanley accounts, seeking exemption as to any funds held by Morgan Stanley for the benefit of Nathan, Nathan's law firm, or his pension plan, or funds held by Merrill Lynch in his recently created trust.

During a hearing on April 23, 2010, Nathan informed the court that the trial court had previously issued a stay. The trial court did not find any record of the stay and did not believe there was any reason for a stay. The court therefore ruled on Robin's pending motions on support and other matters, and denied Nathan's oral motion to set aside the March 22, 2010, and March 26, 2010, orders based on not receiving notice. On June 10, 2010, the court denied Nathan's claim of exemption.

---

[3] Nathan D. LaMoure Law Office Retirement Plan & Trust (Merrill Lynch account No. [redacted]).

**Restraining Order Prohibiting Transfer of Pension Fund Assets**

On July 20, 2010, Robin filed an ex parte motion requesting a temporary order restraining Nathan from withdrawing, transferring, or disposing of any funds held in his Morgan Stanley accounts. Robin asserted the temporary hold was necessary until the trial court ruled on her motion to add Nathan's pension plan to the writ of execution as a judgment debtor. Once the pension was added to the writ, Robin could immediately serve Morgan Stanley with the writ, which would ensure the pension assets were subject to the trial court's jurisdiction and control.

On July 21, 2010, the trial court heard and took under submission Robin's ex parte motion. On or about July 23, 2010,[4] the trial court granted Robin's motion and ordered Nathan restrained from transferring any funds in any Morgan Stanley account in his name or the name of his law firm or law firm pension plan. The court also ordered that Morgan Stanley was to hold all such funds, pending further order of the court.

On August 6, 2010, Nathan transferred approximately $100,000 from his Morgan Stanley pension plan account to his Merrill Lynch trust account.

On August 17, 1010, the court granted Robin's motion and amended the writ of execution by adding the pension plan to the writ. The court issued the

---

[4] The trial court's order is date stamped July 21, 2010. However, the minute order and register of actions state the court ruled on the matter on July 23, 2010, and Nathan states in his notice of appeal that he is appealing the July 23, 2010 order. We will assume solely for purposes of this appeal, that Nathan is appealing the restraining order, regardless of whether the order was actually entered on July 21, 2010, or July 23, 2010.

amended writ of execution for $99,383.65, on August 24, 2010. The instant appeal is founded on this writ of execution. The amended writ of execution (hereafter referred to as "the writ" or "writ of execution") was served on Morgan Stanley as the pension plan administrator. The writ directed the county sheriff to enforce the judgments entered on May 10, 2006, and on March 22, 2010, against Nathan and his pension plan.

On September 13, 2010, Nathan filed a notice of appeal of the March 22, 2010, and March 26, 2010, writ of execution order and judgment, and the July 23, 2010, restraining order. This court dismissed the appeal of the March 22, 2010, and May 26, 2010, order and judgment as untimely.

On September 23, 2010, Robin filed opposition to Nathan's claim of exemption to the writ of execution. Robin opposed Nathan's claim of exemption on the grounds Nathan transferred funds into the trust on August 27, 2010, in direct violation of the trial court's orders, including the automatic temporary restraining orders (ATROs) and July 21, 2010, order, prohibiting any transfer of funds. In addition, the trial court already ruled in June 2010, that funds in the pension plan were not exempt.

On October 8, 2010, the trial court heard and took under submission Nathan's claim of exemption. The court found that the only matter stayed was regarding Nathan's claim of exemption, conditioned upon Nathan properly posting bonds. On October 18, 2010, the court granted Nathan's claim of exemption.

7

**Motion for Reconsideration**

Robin filed an ex parte motion for reconsideration of the October 18, 2010, order. The trial court heard Robin's motion for reconsideration, granted it on December 1, 2010, and amended the order on December 6, 2010. The court found that Robin provided new and different facts, and that the trial court had legal authority to order a writ of execution against Nathan's pension plan. The court vacated its October 18, 2010, order and denied Nathan's claim of exemption.

On December 6, 2010, Nathan filed an ex parte motion to stay execution of the March 2006 and March 2010 orders, quash and recall the writ of execution, vacate the levies, and reconsider the ruling on Robin's motion for reconsideration. The trial court denied Nathan's request for a stay. In addition the trial court modified sua sponte and nunc pro tunc its September 9, 2009 order granting a stay. The trial court explained: "Regarding petitioner's claim that the court's stay pending petitioner's appeal of one narrow issue dealing with Petitioner's IRA, the Court rules that this is NOT a stay of the entire action. Petitioner was previously advised by the Court that the stay did not stay the entire family law proceedings and in fact, Petitioner himself moved this court for orders subsequent to the stay. The Court will order, Sua Sponte and Nunc Pro Tunc that the stay is only applicable to the narrow issue on appeal to the date that the stay was issued."

On December 27, 2010, Nathan filed a supplemental notice of appeal, adding the order entered on December 1, 2010, granting Robin's motion for reconsideration of the order on October 18, 2010.

8

## III

## JULY 2010 RESTRAINING ORDER

Nathan challenges the July 2010 restraining order barring him from transferring assets out of his pension fund but does not specifically state why the order is improper. Nathan seems to be arguing that the restraining order is improper under ERISA, since his pension plan is subject to ERISA protection.

The July 2010 restraining order states: "THE COURT ORDERS: [¶] A) Petitioner [Nathan] is restrained from withdrawing, transferring, encumbering, hypothecating, concealing, or in any way disposing of any property or funds in any account maintained with Morgan Stanley in the name of (1) Nathan D. LaMoure; (2) Nathan D. LaMoure, A Professional Corporation; and (3) Nathan D. LaMoure Law Office Retirement Plan. [¶] B) Morgan Stanley shall hold all funds maintained on Petitioner's behalf in any account in the name of (1) Nathan D. LaMoure; (2) Nathan D. LaMoure, A Professional Corporation; and (3) Nathan D. LaMoure Law Office Retirement Plan, pending further order of this Court. [¶] This order shall be effective starting 7/21/10 for a minimum of 15 days or further order."

The trial court stated that it based the July 2010 restraining order on the following findings: "On evidence presented at the within hearing on Respondent's motion for a restraining order prohibiting the transfer of any funds currently being held at Morgan Stanley, there is GOOD CAUSE to order that Petitioner is prohibited from transferring any and all assets in Petitioner's name in any account

9

maintained at Morgan Stanley, including but not limited to accounts in the name of:  (1) Nathan D. LaMoure; (2) Nathan D. LaMoure, A Professional Corporation; and (3) Nathan D. LaMoure Law Office Retirement Plan."

This restraining order prohibited Nathan from transferring or withdrawing assets from his Morgan Stanley pension plan and law firm account.  The restraining order was consistent with the preexisting ATROs and other orders prohibiting the transfer of assets.  Robin presented evidence that, after the trial court issued the writ of execution in March 2010, Nathan violated the ATROs and March 26, 2010 order by withdrawing assets out of his law firm account and transferring them to his Morgan Stanley pension.

Based on Nathan's violations of the ATROs and other orders prohibiting the transfer of assets, the July 2010 restraining order was appropriate and did not violate ERISA since it appropriately ordered Nathan not to transfer assets during the pending dissolution proceedings.  The order was not against the pension plan. It merely prohibited Nathan from transferring or instigating the transfer of any assets in his name or the name of his law firm or pension plan.  The order further informed Morgan Stanley that, in accordance with the restraining order, Morgan Stanley should not carry out any requests by Nathan to transfer or withdraw assets subject to the order.  Nathan has not demonstrated that the trial court abused its discretion in entering the July 2010 restraining order.

IV

ORDER GRANTING ROBIN'S MOTION FOR RECONSIDERATION

Nathan contends the trial court abused its discretion in granting Robin's motion for reconsideration of the court's October 18, 2010 order. The October order granted Nathan's claim of exemption and his motion to quash the order restraining him from transferring assets from his pension plan. We reject Nathan's contentions challenging the propriety of the underlying writ of execution issued in March 2010, and the related April 23, 2010, order, since those contentions are not properly before this court in this appeal. This court previously dismissed Nathan's appeal of the March and April 2010 orders as untimely. (Code Civ. Proc., § 906; *Walker v. Los Angeles County Metropolitan Transportation Authority* (2005) 35 Cal.4th 15, 19.)

*A. Procedural Background*

On October 18, 2010, the court granted Nathan's claim of exemption on the grounds the court did not have authority under ERISA to issue a writ of attachment of the pension plan on March 22, 2010, and March 26, 2010. The trial court concluded the pension plan was a defined benefit trust plan governed exclusively by ERISA. Therefore the trial court did not have authority to determine whether the plan was a qualified ERISA plan, and funds in the pension plan could only be accessed by a qualified domestic relations order (QDRO). The court ordered the release of any funds held by the levying officer.

Robin immediately filed an ex parte motion for reconsideration of the October 18, 2010 order granting Nathan's claim of exemption. Robin requested the trial court to

11

vacate the order, deny Nathan's claim of exemption, and order the Orange County sheriff to hold the pension plan funds pursuant to the writ of execution, pending the hearing on the motion for reconsideration. The motion was based on a newly discovered Morgan Stanley pension plan statement. Robin argued Morgan Stanley account statements showed that Nathan was secreting community property funds in the pension plan. There was new evidence that, after Nathan filed for divorce, he moved approximately $250,000 out of his pension plan account. On December 1, 2010, the court granted reconsideration and amended its ruling on December 6, 2010, to correct language in the December 1, 2010 order which incorrectly referred to the writ of execution granted on March 22, 2010, and March 26, 2010, as a writ of attachment.

In the December 1, 2010 order, as amended, the trial court found that Robin provided new and different facts and substantial legal authority supporting her position that the trial court had authority to order a writ of execution on Nathan's pension plan. The court concluded the pension plan was not protected by ERISA because Nathan used the pension plan to secrete and shield community assets by funneling them through the pension plan. The court vacated the court's October 18, 2010 order and denied Nathan's claim of exemption. The levying officer was ordered to release to Robin's attorney all funds currently held under the writ of execution issued on March 22, 2010, and March 26, 2010.

B. *New Facts*

Nathan argues the trial court erred in granting Robin's motion for reconsideration because Robin failed to present any new facts or law. We disagree, as did the trial court.

12

A party affected by a trial court's order may seek reconsideration of that order under Code of Civil Procedure section 1008 ". . . within 10 days after service upon the party of written notice of entry of the order and based upon new or different facts, circumstances, or law, . . . The party making the application shall state by affidavit what application was made before, when and to what judge, what order or decisions were made, and what new or different facts, circumstances, or law are claimed to be shown." (Code Civ. Proc., § 1008, subd. (a).) We review the trial court's ruling on the motion for reconsideration under the abuse of discretion standard. (*Glade v. Glade* (1995) 38 Cal.App.4th 1441, 1457.)

Robin's motion for reconsideration was founded on significant new facts and evidence, consisting of a Morgan Stanley account statement for Nathan's pension plan, showing that, as of January 31, 2009, the pension plan account had $149,270 in assets. This evidence supported the reasonable inference that Nathan illicitly removed a total of approximately $250,000 from his pension plan during the marital dissolution proceedings, thereby abrogating his claim of exemption under ERISA.

*C. Applicable Law*

Nathan argues that the writ of execution levied against his pension plan assets violated ERISA because his pension plan is exempt under ERISA. Therefore the court should not have granted reconsideration and set aside Nathan's claim of exemption.

ERISA, as amended by the Retirement Equity Act of 1984 (Pub.L. No. 98-397, 98 Stat. 1426), primarily regulates and preempts state employee benefit plan law. "ERISA is a remedial statute designed to protect the interests of employees in pension and welfare

13

plans [citation], and to protect employers from conflicting and inconsistent state and local regulation of such plans [citation]. The former purpose is achieved through requirements for reporting, disclosure, participation rights, vesting of rights to benefits, funding, fiduciary responsibilities, and claims procedures. [Citation.] The latter purpose is achieved through the preemption, with a few exceptions . . . , of all state laws relating to employee pension and welfare benefit plans. [Citation.]" (*Scott v. Gulf Oil Corp.* (9th Cir. 1985) 754 F.2d 1499, 1501; see also *Shaw v. Delta Air Lines, Inc.* (1983) 463 U.S. 85, 104; *Boggs v. Boggs* (1997) 520 U.S. 833, 845-846 (*Boggs*).)

Although generally ERISA preempts state law, under ERISA state courts have concurrent jurisdiction with the federal district courts when a civil action is brought by an employee benefit plan beneficiary "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." (§ 1132(a)(1)(B) & (e)(1).) In all other instances, the federal district courts have exclusive jurisdiction of civil actions relating to those plans governed by ERISA. (§ 1132(e)(1).) California State law, under Code of Civil Procedure section 704.115, subdivision (b), provides: "All amounts held, controlled, or in process of distribution by a private retirement plan, for the payment of benefits as an annuity, pension, retirement allowance, disability payment, or death benefit from a private retirement plan are exempt."

Nathan argues that, under ERISA and Code of Civil Procedure section section 704.115, subdivision (b), his pension plan is exempt from the writ of execution and is not subject to any exception which would authorize levy upon his pension assets.

14

Therefore, the trial court abused its discretion in vacating its previous order on October 18, 2010, quashing the writ of execution and setting aside his claim of exemption. We disagree. As discussed below, we conclude the new evidence, along with other evidence, supported a reasonable finding by the trial court that Nathan was using his pension plan to secret community property assets and funnel assets through the pension plan. Under such circumstances, ERISA does not apply.

*D. Subject Matter Jurisdiction to Determine if Pension Plan Qualifies*

Nathan argues that, because federal ERISA law preempts state law and the pension plan originally qualified under ERISA for protection, the trial court did not have subject matter jurisdiction to determine that the pension plan did not qualify for ERISA protection. We disagree. Although there is no case law factually on point, *Plunk v. Yaquinto* (*In re Plunk*) (5th Cir. 2007) 481 F.3d 302 (*Plunk*) supports the proposition that the trial court had jurisdiction to determine whether Nathan's pension plan qualified under ERISA.

In bankruptcy proceedings in *Plunk, supra,* 481 F.3d 302, a judgment creditor attempted to garnish the judgment debtor's pension plan assets in order to collect on a judgment. The judgment creditor argued the pension plan was not qualified under the Internal Revenue Code because the debtor had abused pension plan assets and therefore the pension plan assets were not exempt from garnishment. (*Id.* at p. 304.) The *Plunk* court agreed, holding that the bankruptcy court was not required to defer to the Internal Revenue Service's (IRS) initial determination that the pension plan qualified. (*Id.* at p. 307.) The court stated that, when disqualifying events occur after the IRS has last

15

determined that a plan is qualified, the bankruptcy court may, under state law, determine that the plan is no longer qualified based on recent disqualifying events, such as misusing pension plan assets. (*Ibid.*)

Nathan argues *Plunk* is not dispositive because it did not overturn ERISA preemption of state law or establish that there was state subject matter jurisdiction in the instant case. Nevertheless, we conclude *Plunk*, by analogy, supports the proposition that the trial court had jurisdiction to determine that, where there was evidence of abuse of Nathan's pension plan, the pension plan no longer qualified under ERISA for protection and the pension plan assets were not exempt from being levied upon under state law.

E. *The Pension Plan Is Not a Qualified ERISA Plan*

Regardless of whether Nathan's law firm pension plan initially qualified under ERISA, there was substantial evidence that during the marital dissolution proceedings, commencing in 2003, it no longer qualified because Nathan was the sole employee of his law firm, sole shareholder of his law firm, sole beneficiary of his law firm pension plan assets, administrator of the pension plan, and trustee of the pension plan account. Nathan stated in his declaration filed on November 6, 2006, that his law firm was the employer sponsor of the plan. Nathan also stated that he was trustee of the pension plan and he was not receiving any payments from the plan. Nathan further stated that he was the sole remaining employee with vested benefits who was entitled to benefits from the plan. The assets in the plan, according to Nathan, were at that time, approximately $180,000. In another declaration filed on July 6, 2010, Nathan again stated that he was the sole primary beneficiary of the pension plan benefits and administrator of the plan, but no

16

longer trustee of the pension plan trust. Apparently, a relative, Steve LaMoure, replaced him as trustee at some point during the divorce proceedings.

Since there was substantial evidence Nathan was the employer sponsor of the plan and the sole employee, beneficiary and trustee of the pension plan, the trial court reasonably concluded that ERISA was inapplicable and the pension plan was therefore not exempt from the writ of execution under ERISA. (*Nelson v. California Trust Company* (1949) 33 Cal.2d 501, *In re Watson* (Bkrtcy.D.Nev. 1996) 192 B.R. 238, 242, and *In re Acosta* (N.D. Cal. 1994) 182 B.R. 561.) In *Acosta*, the bankruptcy court and federal district court concluded the judgment debtor's pension plans were not ERISA qualified and thus were not excluded under ERISA because there was only one current employee and a sole shareholder of a corporation does not qualify as an employee, but is rather deemed to be an employer. "[A]n employer is prohibited from receiving any benefit from an ERISA-qualified plan." (*Acosta,* at p. 565.) Likewise, here, Nathan's pension plan did not qualify as an ERISA-qualified plan because it "hardly can be said to provide payment of pensions or employee benefits since its sponsors had no employees and were obligated to pay no pensions. The Retirement Plan resembles in name only a private retirement plan intended for such purposes; names alone are not controlling." (*In re Phillips* (1997) 206 B.R. 196, 203 (*Phillips*).)

F. *Misuse of Pension Plan*

Even assuming the pension plan initially qualified under ERISA, there is substantial evidence supporting the trial court's finding that Nathan abused his pension

17

plan during the divorce litigation, and this disqualified the plan from ERISA protection. This is substantiated by the following evidence.

Nathan filed for divorce in February 2003. An income tax form (Actuarial Information Form 5500, Schedule B) dated March 24, 2003, shows that, before filing for divorce, during the period of December 1, 2001, to November 30, 2002, Nathan's pension plan was valued at $145,405. An account statement for Nathan's law firm[5] (Salomon Smith Barney Inc., account No. [redacted]) for December 2002, shows an ending value of $184,591. An account statement for Nathan's pension plan (Salomon Smith Barney Inc., account No. [redacted]), for February 2003, shows an ending value of $113, 373.

By letter dated April 30, 2003, two months after Nathan filed for divorce, Nathan directed the transfer of approximately $100,000 to his pension plan from his law firm investment account (account No. [redacted]), in violation of the ATRO's. An income tax form, Schedule I (Form 5500), entitled, "Financial Information – Small Plan," shows that for the period of December 1, 2003, to November 30, 2004, Nathan's pension plan had a beginning value of $417,174 and ended the year with a value of $403,413. This indicates that Nathan's pension plan increased approximately $250,000 in value in 2003, after Nathan filed for divorce. Actuarial Information Form 5500, Schedule B, dated July 15, 2006, shows that for the period of December 1, 2004, to November 30, 2005, Nathan's pension plan was valued at $379,799.

_____

[5] Nathan D. La Moure, APC.

18

Newly discovered evidence provided in Robin's motion for reconsideration, confirmed that after Nathan filed for divorce, he moved at least $250,000 in community property assets out of his pension plan account during the divorce proceedings. A Morgan Stanley pension plan statement for the month ending January 31, 2009, showed a total value for the pension plan account of $149,270.[6]

The evidence as a whole was sufficient to support the trial court's reasonable findings that after Nathan filed for divorce, Nathan misused his pension plan by secreting, shielding, and illicitly funneling community property assets through the pension plan. As in *Yaesu Electronics Corp. v. Tamura* (1994) 28 Cal.App.4th 8 (*Yaesu*), Nathan's abuse of his pension plan resulted in loss of its exemption status under California law. Likewise, we conclude Nathan's pension plan did not qualify for ERISA protection.

In *Yaesu, supra,* 28 Cal.App.4th 8, judgment creditors brought an action to set aside a judgment debtor's gift of $243,206 to his sons as a fraudulent conveyance. The gift was made one month after a jury entered a $2.2 million verdict against the judgment debtor. The gifted funds were from the judgment debtor's benefit pension plan. He also divested himself of many of his other assets against which the creditor could execute. The judgment debtor maintained that the funds given to his sons were entitled to the

---

[6] In January 2009, Smith Barney merged with Morgan Stanley's Global Wealth Management Group. The joint venture thereafter operated as Morgan Stanley Smith Barney. (http://www.citigroup.com/citi/press/2009/090113c.pdf, "Morgan Stanley and Citi to Form Industry-Leading Wealth Management Business Through Joint Venture," Morgan Stanley, Citigroup release, January 13, 2009.)

statutory exemption from execution accorded private retirement plans under Code of Civil Procedure section 704.115. The trial court and Court of Appeal concluded the exemption was inapplicable because the plan was not designed and used for retirement purposes. The transfer of funds to the sons was one of many assets which would have been subject to execution by the judgment creditor and which the judgment debtor intended to conceal from the judgment creditor.

The *Yaesu* court explained that Code of Civil Procedure section 704.115 exempts property otherwise available for enforcement of a money judgment. The court further explained that "The purpose of this exemption is to safeguard a source of income for retirees at the expense of creditors. [Citation.] However, neither the debtor's mere compliance with the pertinent IRS rules in creating the private retirement plan nor the debtor's designation of the asset as a private retirement plan translates to an automatic exemption from execution. In analyzing Code of Civil Procedure section 704.115, in the context of a bankruptcy proceeding, [] the Ninth Circuit Court of Appeals recently held: 'Without regard to its label, a plan not used and designed for retirement purposes is not a retirement plan' entitled to the benefit of the statutory exemption. [Citation.]" (*Yaesu, supra,* 28 Cal.App.4th at pp. 13-14.) The dispositive inquiry for the trial court in *Yaesu* was whether the plan was designated and used for retirement purposes. (*Id.* at p. 14.)

Likewise, in *Phillips, supra,* 206 B.R. 196, the bankruptcy court concluded that the judgment debtors were shielding equity in their residence and other assets in their private retirement plan. (*Id.* at p. 203.) The *Phillips* court stated that "The facts are overwhelming that Debtors designed and used the Retirement Plan, not to provide for

20

their later years, but to frustrate the Mayers in the enforcement of their state court judgment. . . . [S]hielding of assets is clearly not a proper retirement purpose." (*Ibid.*) The court further stated that the expenditure of funds in the retirement plan and revocable trust for their own legal defense and other expenses was inconsistent with using the plan for retirement purposes. (*Ibid.*) Based on the *Phillips* court's findings that the judgment debtors were shielding assets in their retirement plan and not using the plan for a proper retirement purpose, the bankruptcy court in *Phillips* held that the retirement plan assets were not exempt, the retirement plan was deemed a nullity, and the assets in it could be reached as though the retirement plan did not exist. (*Ibid.*)

In the instant case, a reasonable inference can be made that Nathan used his pension plan to shield assets during his divorce proceedings, rather than use the plan and assets funneled through the plan solely for retirement purposes. Although *Yaesu* and *Phillips* do not address application of ERISA, the rationale for rejecting the pension plan exemption under Code of Civil Procedure section 704.115 in *Yaesu* and *Phillips* applies in the instant case to an exemption under ERISA. Even though in the instant case there may have been compliance with IRS rules and the plan initially may have qualified as a pension plan under Code of Civil Procedure section 704.115, as well as ERISA, there was substantial evidence that during the marital dissolution proceedings the plan was not used for a retirement purpose. Rather, Nathan used the pension plan to secret and shield community property assets by funneling them through the plan. Just as the pension plan is not subject to exemption under Code of Civil Procedure section 704.115, it is also not entitled to protection under ERISA.

21

*In re Bell & Beckwith* (1993) 5 F.3d 150 (*Bell*), supports this proposition. In *Bell*, a stock brokerage partnership set up a retirement plan and trust, which was approved by the IRS as an ERISA qualified pension plan. Later, the partnership entered bankruptcy. (*Id.* at p. 151.) The bankruptcy trustee initiated suit against the general partners of the partnership and obtained a deficiency judgment against them and writs of execution against their interests in the retirement plan. (*Id.* at p. 152.) The trustee of the pension plan objected to the writ of execution on the ground ERISA exempted the pension plan from garnishment. (*Id.* at p. 151.) The bankruptcy trustee countered that contributions made to the retirement plan violated the terms of the plan and were void *ab initio* (invalid), because the partnership's managing and general partner had embezzled millions of dollars from the partnership and there was no net income. Therefore the invalid contributions could be garnished for the benefit of the bankruptcy estate, despite ERISA. (*Id.* at pp. 151-152.)

The court in *Bell* agreed and affirmed the district court ruling. (*Bell, supra,* 5 F.3d at pp. 152-153.) The *Bell* court explained that ERISA protections did not apply because contributions to the pension plan, made in violation of the plan's net income requirement, were invalid and void. The contributions therefore never became a part of the plan and were not exempt under ERISA. (*Id.* at p. 153.)

Likewise, here, the community property assets illicitly funneled through Nathan's pension plan during the marital dissolution proceedings were invalid, and thus were never part of the pension plan. Because such assets were comingled with other assets in the pension plan and the pension plan was abused, the assets remaining in the plan are not

22

protected by ERISA and are subject to the writ of execution of Robin's attorney's fee award against the pension plan assets.

## G. A QDRO Is Not Required For Levying on the Writ of Execution

Nathan argues that execution on the writ for collection of Robin's attorney's fees from his pension plan can only be accomplished through a QDRO. Nathan asserts that, since the writ of execution is not in the form of a QDRO, ERISA's anti-alienation of pension assets and benefits prohibits execution of the attorney's fees award in favor of Robin's attorney. "QDRO's, unlike domestic relations orders in general, are exempt from both the pension plan anti-alienation provision, § 1056(d)(3)(A), and ERISA's general pre-emption clause, § 1144(b)(7)." (*Boggs, supra,* 520 U.S. at p. 846.)

Here, the attorney's fees award was payable to Robin's attorney, who does not qualify for a QDRO because she is not a nonparticipant spouse or dependent. "A QDRO is a type of domestic relations order that creates or recognizes an alternate payee's right to, or assigns to an alternate payee the right to, a portion of the benefits payable with respect to a participant under a plan. § 1056(d)(3)(B)(i). . . . In creating the QDRO mechanism Congress was careful to provide that the alternate payee, the 'spouse, former spouse, child, or other dependent of a participant,' is to be considered a plan beneficiary. §§ 1056(d)(3)(K), (J). These provisions are essential to one of REA's central purposes,[7] which is to give enhanced protection to the spouse and dependent children in

---

[7] The Retirement Equity Act of 1984 (REA), Pub.L. No. 98-397, 98 Stat. 1426, sought to protect the rights of surviving spouses. (*In re Marriage of Padgett* (2009) 172 Cal.App.4th 830, 840.)

the event of divorce or separation, and in the event of death the surviving spouse. Apart from these detailed provisions, ERISA does not confer beneficiary status on nonparticipants by reason of their marital or dependent status." (*Boggs, supra,* 520 U.S. at pp. 846-847.)

Nathan further argues that under ERISA, even if there was a QDRO, the pension assets are not accessible, and there exists no rights to actual distribution of the benefits to a third party under a QDRO until his pension benefits are actually being paid out. According to Nathan, to date, he has not yet begun receiving any pension benefits.

A QDRO was not required in the instant case to levy against the pension plan assets because, as discussed above, there was substantial evidence that Nathan abused his pension plan by funneling community property assets through the plan and therefore the plan was not protected by ERISA or exempt under Code of Civil Procedure section 704.115.

V

DISPOSITION

The judgment is affirmed. The trial court did not err in entering a restraining order on July 21, 2010, or July 23, 2010, prohibiting disbursements from Nathan's pension plan. There also was no abuse of discretion in granting on December 1, 2010, Robin's motion for reconsideration of the court's order on October 18, 2010, and denying Nathan's claim of exemption, since there was substantial evidence that Nathan misused his pension plan to secrete and shield community assets by funneling them through the pension plan.

24

Nathan is ordered to pay Robin's costs on appeal.

CERTIFIED FOR PUBLICATION

<u>CODRINGTON</u>
J.

We concur:


<u>McKINSTER</u>
Acting P. J.


<u>MILLER</u>
J.